902 So.2d 746 (2005)
Darrick Terrell ADAWAY, Petitioner,
v.
STATE of Florida, Respondent.
No. SC04-239.
Supreme Court of Florida.
March 17, 2005.
Rehearing Denied May 10, 2005.
Bennett H. Brummer, Public Defender and Roy A. Heimlich, Assistant Public Defender, Eleventh Judicial Circuit, Miami, FL, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL, Richard Polin, Bureau Chief, Criminal Appeals and Paulette R. Taylor, Assistant Attorney General, Miami, FL, for Appellee.
CANTERO, J.
We review Adaway v. State, 864 So.2d 36 (Fla. 3d DCA 2003), which expressly declared valid a state statute mandating life imprisonment without the possibility of parole for persons convicted of capital sexual battery. We have discretionary jurisdiction and granted review. See art. V, § 3(b)(3), Fla. Const.; Adaway v. State, 871 So.2d 871 (Fla.2004) (order granting review).[1] The sole issue is whether a sentence *747 of life imprisonment without the possibility of parole for oral union with the vagina of a girl under the age of twelve constitutes either cruel and unusual punishment (in violation of the Eighth Amendment to the United States Constitution) or cruel or unusual punishment (in violation of the former version of article I, section 17 of the Florida Constitution).[2] In a case involving the identical crime, we held that a sentence of life imprisonment with the possibility of parole after twenty-five years complies with both constitutional provisions. See Banks v. State, 342 So.2d 469 (Fla.1976). We reach the same conclusion now, notwithstanding the Legislature's elimination of the possibility of parole.

I. FACTS
The defendant, Darrick Terrell Adaway, sexually assaulted an eleven-year-old girl while she slept in the bedroom she shared with her siblings. Adaway, who was thirty-six years old at the time, entered the bedroom, woke the victim, and told her to pull down her underwear. He then touched her vagina with his tongue. The State charged Adaway with sexual battery on a child under twelve in violation of section 794.011(2), Florida Statutes (1999), and with lewd or lascivious molestation of a child under twelve in violation of section 800.04(5)(b), Florida Statutes (1999). A jury convicted Adaway of both charges. The trial court sentenced him to life imprisonment without the possibility of parole on the sexual battery charge, which was a mandatory sentence under section 775.082(1), Florida Statutes (1999). The court also sentenced him to thirty years' imprisonment on the lewd or lascivious molestation charge.
On appeal, Adaway argued that a sentence of life imprisonment without parole was grossly disproportionate to his crime and therefore violated both the Cruel and Unusual Punishments Clause of the United States Constitution and the former Cruel or Unusual Punishment Clause of the Florida Constitution. See Adaway, 864 So.2d at 37. The Third District disagreed and upheld Adaway's sentence. Id. at 37-38. The court noted, however, that a concurring opinion from this Court had cautioned that "the constitutionality of a mandatory punishment of life imprisonment for the specific crime of sexual battery without penile/vaginal union is a significant concern." Id. at 38 (quoting Welsh v. State, 850 So.2d 467, 474 n. 8 (Fla.2003) (Pariente, J., concurring)). We granted review to resolve the issue. Adaway, 871 So.2d at 871.

II. ANALYSIS
The statute defines sexual battery as "oral, anal, or vaginal penetration by, or union with, the sexual organ of another or *748 the anal or vaginal penetration of another by any other object." § 794.011(1)(h), Fla. Stat. (1999). When a person at least eighteen years old commits sexual battery on a person under twelve, the statute deems it "a capital felony, punishable as provided in ss. 775.082 and 921.141." § 794.011(2)(a), Fla. Stat. (1999). As written, the cross-referenced section provides that capital sexual battery is punishable by death. § 775.082(1), Fla. Stat. (1999). In Buford v. State, 403 So.2d 943 (Fla.1981), however, we held that a sentence of death for capital sexual battery violates the Eighth Amendment.
Following Buford, the maximum sentence for capital sexual battery became life imprisonment with the possibility of parole after twenty-five years. See Rusaw v. State, 451 So.2d 469, 470 (Fla.1984) ("Death is no longer permissible for the sexual battery described in subsection 794.011(2), but life imprisonment with a twenty-five-year minimum is."). We have upheld such a sentence as applied to the crime of oral union with the genitals of a child under twelve. See Banks, 342 So.2d at 470.
In 1995, the Legislature eliminated the possibility of parole for convictions of capital sexual battery. See Ch. 95-294, § 4, at 2718, Laws of Fla. Thus, section 775.082 now provides that a person convicted of capital sexual battery "shall be punished by life imprisonment and shall be ineligible for parole." § 775.082(1), Fla. Stat. (1999). Adaway, who received such a sentence, contends it is grossly disproportionate to his crime and therefore violates both the United States and the Florida Constitutions.
Like the United States Supreme Court, we have been reluctant to declare a sentence cruel or unusual simply because of its length. See Rummel v. Estelle, 445 U.S. 263, 274, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (expressing a "reluctance to review legislatively mandated terms of imprisonment"). As we have stated more than once, "the length of the sentence actually imposed is generally said to be a matter of legislative prerogative." Hall v. State, 823 So.2d 757, 760 (Fla.2002) (quoting Hale v. State, 630 So.2d 521, 526 (Fla.1993)). We noted in Hall that both "[t]he Eighth Amendment to the United States Constitution and [the former] article I, section 17 of the Florida Constitution have historically provided protection relative to the mode and method of punishment, not the length of incarceration." 823 So.2d at 760; see also id. ("Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare.") (quoting Rummel, 445 U.S. at 272, 100 S.Ct. 1133). We reiterate the soundness of this approach. Accordingly, we analyze Adaway's claims with "substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." Solem v. Helm, 463 U.S. 277, 290, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).
We first discuss Adaway's challenge to his sentence under the Cruel and Unusual Punishments Clause of the Eighth Amendment to the United States Constitution. We then address his claim that the sentence violates the former version of article I, section 17 of the Florida Constitution.

A. Eighth Amendment
The United States Supreme Court has not reached a majority consensus on the standard for determining the constitutionality of long prison sentences. See Ewing v. California, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) (plurality opinion); Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (plurality opinion). The Court has acknowledged that "in determining whether *749 a particular sentence for a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for courts to follow." Lockyer v. Andrade, 538 U.S. 63, 72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). A majority of the Court recently agreed, however, that "[t]hrough this thicket of Eighth Amendment jurisprudence, one governing legal principle emerges as `clearly established'"  namely, that a "gross disproportionality principle is applicable to sentences for terms of years." Id. (quoting 28 U.S.C. § 2254(d)(1)). In other words, to violate the Cruel and Unusual Punishments Clause, a prison sentence must, at least, be grossly disproportionate to the crime.
The first and only case in which the Supreme Court has invalidated a prison sentence because of its length was Solem v. Helm, 463 U.S. at 290, 103 S.Ct. 3001. See Erwin Chemerinsky, The Constitution and Punishment, 56 Stan. L.Rev. 1049, 1058 (2004) (noting that "Solem v. Helm remains the only case in which the Supreme Court has found a prison sentence to be grossly disproportionate"). The defendant in Solem had been sentenced to life imprisonment without parole for writing a "no account" check for $100. 436 U.S. at 281, 98 S.Ct. 1795. The defendant previously had been convicted of six nonviolent felonies, including third-degree burglary (three times), obtaining money under false pretenses, grand larceny, and third-offense driving while intoxicated. Id. at 279-80, 98 S.Ct. 1795. The Court concluded that the sentence of life imprisonment without parole was "significantly disproportionate to [the] crime, and ... therefore prohibited by the Eighth Amendment." Id. at 303, 98 S.Ct. 1795.
In Solem, the Court's proportionality analysis was "guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." Id. at 292, 103 S.Ct. 3001. While characterizing the first of the three factors as one that "a court must consider," in discussing the other factors the Court stated only that "it may be helpful" to apply the second and that "courts may find it useful" to apply the third. Id. at 291, 103 S.Ct. 3001.
Solem remains the only case in which the United States Supreme Court declared a sentence unconstitutional based on its length. Since then, it has twice upheld such sentences, but without agreement on a rationale. Eight years after Solem, the Supreme Court decided Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). In Harmelin, the defendant was convicted of possessing 672 grams of cocaine. He received life imprisonment without parole. Id. at 961, 111 S.Ct. 2680. The Court upheld the sentence. Justice Scalia, in a plurality opinion joined by Chief Justice Rehnquist, argued that "Solem was simply wrong" and that proportionality review should apply only in death penalty cases. Id. at 965, 994, 111 S.Ct. 2680. Justice Kennedy wrote a concurring opinion, joined by Justices O'Connor and Souter, which interpreted Solem as adopting a "narrow proportionality principle." Id. at 997, 111 S.Ct. 2680 (Kennedy, J., concurring in part and concurring in the judgment). According to Justice Kennedy, "[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are `grossly disproportionate' to the crime." Id. at 1001, 111 S.Ct. 2680 (quoting Solem, 463 U.S. at 288, 103 S.Ct. 3001). Justice Kennedy rejected the idea that Solem had "announce[d] a rigid three-part test" for proportionality. Id. at 1004, 111 S.Ct. *750 2680. Instead, he concluded that the second and third factors from Solem, which involve comparative analysis, "are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." Id. at 1005, 111 S.Ct. 2680. Finding no such inference in Harmelin, Justice Kennedy began and ended his analysis with the first factor from Solem. See id. at 1004, 111 S.Ct. 2680. The four dissenters criticized Justice Kennedy's concurrence for "abandon[ing] the second and third factors set forth in Solem" and thereby "mak[ing] any attempt at an objective proportionality analysis futile." Id. at 1020, 111 S.Ct. 2680 (White, J., dissenting).
These divisions persisted in Ewing v. California, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003), the Court's most recent decision on the issue. In Ewing, the defendant shoplifted three golf clubs, each valued at $399. Id. at 18, 123 S.Ct. 1179. Because of his prior convictions of three burglaries and a robbery, he was sentenced to prison for twenty-five years to life under California's three strikes law. Id. at 20, 123 S.Ct. 1179. The Court upheld the sentence, again without a majority rationale. Justice O'Connor, writing for a plurality of three (joined by Chief Justice Rehnquist and Justice Kennedy), applied Justice Kennedy's analysis from Harmelin and concluded the sentence was not "grossly disproportionate" to the crime. Id. at 30, 123 S.Ct. 1179. Concurring separately in the judgment, Justices Scalia and Thomas argued that prison sentences should never be invalidated because of their length. Id. at 31-32, 123 S.Ct. 1179 (Scalia, J., concurring in the judgment); id. at 32, 123 S.Ct. 1179 (Thomas, J., concurring in the judgment). The four dissenters protested that, even applying Justice Kennedy's framework, Ewing "is a `rare' case  one in which a court can say with reasonable confidence that the punishment is `grossly disproportionate' to the crime." Id. at 37, 123 S.Ct. 1179 (Breyer, J., dissenting).
We read the decisions in Solem, Harmelin, and Ewing as requiring, for a prison sentence to constitute cruel and unusual punishment solely because of its length, that at a minimum the sentence be grossly disproportionate to the crime. The Court itself has announced that it is "clearly established" that "[a] gross disproportionality principle is applicable to sentences for terms of years." Lockyer, 538 U.S. at 72, 123 S.Ct. 1166. In this case, we need not speculate about other requirements because Adaway has failed to demonstrate gross disproportionality.
We conclude that Adaway's sentence of life imprisonment without parole is not grossly disproportionate to his crime of oral union with the vagina of a girl under the age of twelve. We reiterate that "the length of the sentence actually imposed is generally said to be a matter of legislative prerogative." Hall, 823 So.2d at 760 (quoting Hale, 630 So.2d at 526). Although the penalty is harsh, we accept the Legislature's judgment about the gravity of the crime. See Kendry v. State, 517 So.2d 78, 79 (Fla. 1st DCA 1987) (stating that sexual battery upon a child is "one of the most heinous and despicable offenses imaginable"). As one court has remarked:
Child sexual predation is a serious concern. Even when it leaves no physical scars, it can create emotional damage that lasts a lifetime. There is evidence that victims of abuse can become abusers and that this crime can transmit its injuries across generations. Because victims hesitate to report this crime and proof of the offense is often difficult to obtain, there is a risk that perpetrators will believe they can escape detection *751 and punishment. As a result, there is a need for a harsh penalty to act as a sufficient deterrent.
Gibson v. State, 721 So.2d 363, 368-69 (Fla. 2d DCA 1998) (citing Charles A. Phipps, Children, Adults, Sex and the Criminal Law: In Search of Reason, 22 Seton Hall Legis. J. 1, 107 (1997)).
We have recognized that "[n]early all sexual battery cases inflict emotional hardship on the victim." Lerma v. State, 497 So.2d 736, 739 (Fla.1986). The crime of sexual battery is especially harmful to young victims. Researchers have identified a long list of harms caused by child sexual abuse, including "fears, anxiety, phobias, sleep and eating disturbances, poor self-esteem, depression, self-mutilation, suicide, anger, hostility, aggression, violence, running away, truancy, delinquency, increased vulnerability to revictimization, substance abuse, teenage prostitution, and early pregnancy." Frank W. Putnam & Penelope K. Trickett, Child Sexual Abuse: A Model of Chronic Trauma, 56 Psychiatry 82, 84 (1993); see also Kathleen A. Kendall-Tackett et al., Impact of Sexual Abuse on Children: A Review and Synthesis of Recent Empirical Studies, 113 Psychol. Bulletin 164, 165 (1993) (finding that seven factors stand out in sexually abused children as compared with non-abused children: aggression, anxiety, depression, externalizing, internalizing, sexualized behavior, and withdrawal). Research has further shown that certain adult psychiatric problems, including eating disorders, personality disorders, and somatization disorder (physical symptoms without medical explanation), can be directly related to child sexual abuse. See Putnam & Trickett, 56 Psychiatry at 83. Given this array of potentially lifelong harms associated with sexual abuse of children, we will not second-guess the Legislature's judgment that such a crime warrants a lifelong penalty.
A comparison of the crime in this case to those involved in the relevant United States Supreme Court decisions strengthens our conclusion. The Court has upheld a life sentence without the possibility of parole for the possession of 672 grams (about 1.5 pounds) of cocaine, Harmelin, 501 U.S. at 979, 111 S.Ct. 2680, and a sentence of twenty-five years to life for shoplifting three golf clubs after previous convictions of three burglaries and a robbery, Ewing, 538 U.S. at 11, 123 S.Ct. 1179. The Court concluded that neither sentence was grossly disproportionate to the crime. To classify Adaway's life sentence without parole as grossly disproportionate, we would have to conclude that an adult's oral union with the vagina of an eleven-year-old girl is an objectively lesser offense than possessing one and a half pounds of cocaine or shoplifting three golf clubs after previous convictions of three burglaries and a robbery. We are unable to do so. Indeed, Adaway's sexual abuse arguably constitutes a substantially greater offense.
This case is drastically different from Solem, the lone case in which the Supreme Court has invalidated a prison sentence because of its length. 463 U.S. at 303, 103 S.Ct. 3001. In Solem, the defendant received a life sentence without the possibility of parole for fraudulently writing a $100 check, which the Court described as "one of the most passive felonies a person could commit." Id. at 296, 103 S.Ct. 3001 (quoting State v. Helm, 287 N.W.2d 497, 501 (S.D.1980) (Henderson, J., dissenting)). The Court emphasized that the crime in Solem "involved neither violence nor threat of violence to any person." Id. In contrast, there was nothing passive or nonviolent about Adaway's crime. He approached his eleven-year-old victim in her bedroom while she was sleeping, ordered *752 her to remove her clothing, and touched her genitals without her consent. This is one of the more active and physically threatening felonies a person can commit on a child.
We reach the same conclusion in this case as we did in Banks, 342 So.2d at 469. In Banks, which involved the same crime, we upheld a sentence of life imprisonment with the possibility of parole after twenty-five years. Id. at 470. The only difference in this case is that the Legislature has since removed the possibility of parole. Adaway has not urged us to recede from Banks. Rather, he argues that the absence of parole eligibility distinguishes his case from Banks and mandates the opposite result.
It is true that the Supreme Court has considered parole eligibility relevant under the Eighth Amendment, at least in close cases. See Rummel, 445 U.S. at 280-81, 100 S.Ct. 1133. In Rummel, the defendant received a life sentence for obtaining $120.75 by false pretenses, after having been previously convicted of two monetary frauds totaling $108.36. Id. at 265-66, 100 S.Ct. 1133. In upholding the defendant's life sentence, the Court emphasized that Texas had a "relatively liberal policy" that "historically has allowed a prisoner serving a life sentence to become eligible for parole in as little as 12 years." Id. at 280, 100 S.Ct. 1133.
Florida has a more stringent parole policy, however, making parole eligibility less relevant to our analysis. "In Florida, parole-eligible inmates do not have a legitimate expectation of liberty or right to expect release on a certain date even after they have been given a specific Presumptive Parole Release Date"  much less when they are given a life sentence that allows for the possibility of parole. Meola v. Dep't of Corrections, 732 So.2d 1029, 1034 (Fla.1999). In fact, as one court has noted, "[f]or many prisoners, the sentence imposed for capital sexual battery prior to [the Legislature's elimination of parole eligibility in] 1995 may result in a sentence just as long as a sentence imposed after 1995." Gibson, 721 So.2d at 369.
We disagree with Adaway's argument that the absence of parole eligibility in this case mandates a different result. Our affirmance of the sentence in Banks did not depend on the existence of parole eligibility. While the Legislature's elimination of parole eligibility after twenty-five years has increased the overall harshness of the punishment for capital sexual battery, the difference is not severe enough to render Adaway's life sentence grossly disproportionate. We therefore hold that Adaway's sentence satisfies the requirements of the Cruel and Unusual Punishments Clause.

B. The Former Article I, Section 17
We next consider whether Adaway's sentence violates the former article I, section 17 of the Florida Constitution. Because this provision forbade "cruel or unusual punishment" as opposed to the Eighth Amendment's prohibition of "cruel and unusual punishment," the Florida provision arguably was broader. See Hale, 630 So.2d at 526. We have never concluded, however, that the difference between the federal "and" and the Florida "or" was constitutionally decisive. For this reason, we have never precisely identified the parameters of the former Cruel or Unusual Punishment Clause. In Hale, for example, we concluded: "It is not necessary to delineate the precise contours of the Florida guarantee against cruel or unusual punishment ... because Hale's sentence is clearly not disproportionate." Id. at 526. We reach the same conclusion here. We therefore hold that Adaway's sentence does not violate article I, section 17 of the Florida Constitution.

*753 III. CONCLUSION
For the reasons stated, we hold that Adaway's sentence of life imprisonment without parole for the crime of oral union with the genitals of a child under the age of twelve does not violate either the Eighth Amendment to the United States Constitution or article I, section 17 of the Florida Constitution. We approve the district court's decision upholding Adaway's sentence.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, and BELL, JJ., concur.
PARIENTE, C.J., concurs with an opinion, in which ANSTEAD, J., concurs.
PARIENTE, C.J., concurring.
I have previously expressed reservations about the constitutionality of a mandatory life sentence for sexual battery in which the defendant's penis does not come into contact with the victim's vagina. See Welsh v. State, 850 So.2d 467, 474 n. 8 (Fla.2003) (Pariente, J., concurring). Although this case, like Welsh, involves a sentence of life imprisonment without parole for the crime of capital sexual battery involving contact between the defendant's mouth and the victim's vagina, I concur in the Court's decision because I agree that relief is foreclosed under the applicable precedent.[3]
Although I would not hold the sentence in this case unconstitutional, I would request that the Legislature consider addressing whether all conduct now labeled capital sexual battery should in all circumstances yield a mandatory term of life imprisonment. Without question, the crime, however committed, is an appalling violation that cannot be tolerated by a society that values its children. And the conduct of the defendant in this case is justifiably punished by a lengthy sentence, particularly in light of a prior record that includes a previous conviction of sexual battery. Yet the question remains whether, under every possible scenario in which the crime of capital sexual battery may be committed, society is well served by warehousing the offender in prison for the remainder of his or her life.
Initially, Florida is in a small minority of states that requires a life sentence for a perpetrator's first sexual assault of a child. The others are Illinois, Louisiana, Ohio, and North Carolina. See People v. Huddleston, 212 Ill.2d 107, 287 Ill.Dec. 560, 816 N.E.2d 322, 341-42 (2004). Moreover, the definition of "sexual battery" applicable to prosecutions of capital sexual battery in Florida is broad. The Second District has explained how this occurred:
Through the 1960s, capital sexual battery was punishable by death. During that period, capital sexual battery required proof that a defendant "carnally know and abuse a female child." See § 794.01, Fla. Stat. (1969). That statute, based on the common law, required proof of penetration. See Askew v. State, 118 So.2d 219, 221 (Fla.1960). Under that statute, Mr. Gibson could have been convicted of a lesser offense, but probably would not have been convicted of capital sexual battery.[4]

*754 Florida's rape statute was amended in 1974. See ch. 74-121, Laws of Fla. The amendment changed the definition of sexual battery to "oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object." § 794.011(f), Fla. Stat. (Supp.1974). This is the same definition of sexual battery that is used in the current statute. See § 794.011(1)(h), Fla. Stat. (1997). This anatomically correct, but more antiseptic, definition of capital sexual battery transformed acts that were previously lesser offenses into capital sexual battery. This amendment also results in the more frequent prosecution of capital sexual battery cases in which there is little, if any, physical evidence of rape. Often a defendant is convicted of this crime based primarily, if not exclusively, on the testimony of a young child.
Gibson v. State, 721 So.2d 363, 367 (Fla. 2d DCA 1998).
I agree with the warning by Judge Altenbernd in Gibson that the mandatory life penalty for capital sexual battery may discourage both reporting of the crime and guilty verdicts for those apprehended and tried:
There is reason to be concerned that family members who know about the severity of this penalty will hesitate or even refuse to report intrafamily sexual battery, or choose not to cooperate with its prosecution. The eloquent juror in this case demonstrates that jurors who understand the law may choose to exercise their options of jury pardon in some cases. Thus, there is a possibility this inflexible mandatory penalty of life imprisonment may result in fewer convictions for this type of sexual predation than a more flexible penalty. As a result, this more severe punishment may ultimately prove to be a lesser deterrent than a more flexible penalty. These concerns ... are matters for consideration by the legislature....
Id. at 370.
Another consideration weighing in favor of determinate sentences is that mandatory life sentences for capital sexual battery offenders contribute to the aging of Florida's prison population. Figures supplied by the Department of Corrections show that from January 2000 to December 2004, the percentage of state prison inmates fifty years of age or older increased from 7.7 percent to 11.2 percent, an increase of 3,938 prisoners. It is well known that older prisoners have higher health care costs than both younger prisoners and older persons who are not incarcerated, and these costs are almost always borne by the taxpayers. Moreover, when they are released after serving lengthy sentences, older prisoners recidivate at lower rates than their younger counterparts. See generally Florida Department of Corrections, Recidivism Report: Inmates Released from Florida Prisons July 1995 to June 2001, at http://www.dc.state.fl.us/pub/recidivism/2003/full.pdf (visited March 11, 2005).
Further, for those older prisoners who continue to pose a substantial risk of reoffending after serving their sentences, in enacting the Jimmy Ryce Act the Legislature has created a powerful tool for keeping dangerous sexual offenders away from the public long after their sentences have ended. See §§ 394.912-394.931, Fla. Stat. (2004). A person who has completed a sentence for sexual battery may be civilly committed under the Ryce Act if the person is determined by a judge or jury to be suffering from "a mental abnormality or personality disorder that makes the person *755 likely to engage in acts of sexual violence if not confined in a secure facility." § 394.912(10)(b), 394.917(1), Fla. Stat. (2004). Thereafter, the person is released only if he or she is found to be "not likely to commit acts of sexual violence if discharged." § 394.919(1), Fla. Stat. (2004).
The Ryce Act serves at least one of the purposes of a mandatory life sentence for capital sexual battery  to prevent further victimization of children. Its availability supports re-examination of whether conduct that does not include sexual penetration or grave injury should be defined as capital sexual battery, or whether the crime of capital sexual battery should be redesignated a life felony, which would restore some degree of sentence discretion.[5]
Finally, if capital sexual battery remains a capital felony, I urge this Court to consider amending Florida Rule of Criminal Procedure 3.270 to require a jury of twelve in these cases. As noted in Palazzolo v. State, 754 So.2d 731, 737 (Fla. 2d DCA 2000), the evidence in a capital sexual battery trial can be much more tenuous than in a murder trial, and often rests largely on the victim's testimony and hearsay statements. Unless the defense agrees to a jury of six, a twelve-person jury is required in first-degree murder cases in which the maximum penalty is life imprisonment because the State is not seeking the death penalty. See State v. Griffith, 561 So.2d 528 (Fla.1990).
There may be merit to the notion that a unanimous guilty verdict by a jury of twelve should also be required for capital sexual battery cases, unless waived by the defendant. Amendment of rule 3.270 would be necessary because this Court has previously held that a twelve-person jury is not required under the rule for a capital sexual battery trial. See State v. Hogan, 451 So.2d 844, 845-846 (Fla.1984). The matter should be referred to the Criminal Procedure Rules Committee for study and a possible recommendation.
ANSTEAD, J., concurs.
NOTES
[1] The district court did not say, in so many words, that the statute at issue was valid. The sole issue before the district court, however, was whether the defendant's sentence constituted cruel and unusual punishment. That sentence was based on the statute. Therefore, a finding that the sentence was constitutional necessarily included a finding that the statute on which it was based was also constitutional.
[2] At the time of the crime, article I, section 17 of the Florida Constitution provided: "Excessive fines, cruel or unusual punishment, attainder, forfeiture of estate, indefinite imprisonment, and unreasonable detention of witnesses are forbidden." In 2002, Florida voters changed the phrase "cruel or unusual punishment" to "cruel and unusual punishment." The amended version is arguably narrower. Cf. Hale v. State, 630 So.2d 521, 526 (Fla.1993) ("The federal constitution protects against sentences that are both cruel and unusual. The Florida Constitution, arguably a broader constitutional provision, protects against sentences that are either cruel or unusual."). Both parties acknowledge that the earlier version of article I, section 17 applies to this case. We agree.
[3] I also note that the trial court would have been compelled to sentence Adaway to life imprisonment for this crime even if it were classified as a life felony. Adaway was separately sentenced to thirty years' incarceration as a prison releasee reoffender for lewd and lascivious molestation on the same victim. Under section 775.082(9)(a)(3)(a), Florida Statutes (2004), the trial court is required to impose a life sentence upon a prison releasee reoffender who commits a life felony.
[4] Gibson engaged in penile-vaginal union with his female victim. Adaway's conduct, oral-vaginal union, would not have constituted capital sexual battery before the 1974 amendment to section 794.011.
[5] For a life felony committed after July 1, 1995, the trial court may impose a term of imprisonment of life or a term of years not exceeding life. See § 775.082(3)(a)(3), Fla. Stat. (2004).