WOLF, J.
Appellant challenges his conviction for lewd or lascivious molestation of a victim, L.C., a child younger than 12 years of age, and appellant’s resulting sentence of life without the possibility of parole. Hé raises a number of issues on appeal. We affirm’ but write to address briefly' one issue: whether the sentence violates the bah on cruel and uriüsúal punishment.
L.C., a close friend of appellant’s daughter, testified that when she was 11 years old, she spent the night at appellant’s home. During the night she awoke to find appellant standing by her head and touching her upper thigh. Appellant then began to rub her upper arm and breast area. When asked io indicate what part of her breast area was touched, the prosecutor stated for the record that L.C.’s left hand cupped her (presumably right) breast. At the time of the’ incident, she testified, she was wearing pajama pants, a T-shirt, and a “small bra.”
_ The unwanted touching in a sexual manner was not. an isolated incident but part of a similar pattern of behavior testified to at trial by three other victims.[1] J.H. testified concerning a similar incident that occurred when she was 9 or 10. She was sleeping on a couch at appellant’s home when she felt someone rubbing her feet and then *706 spreading her toes apart. Appellant then slid his hand up her leg, halfway up her thigh. When she awoke, appellant apologized and ran from the room.
J.H.T., age 11, testified that when she spent the night at appellant’s house, she woke up with appellant touching her on the vaginal area. After several minutes, he walked away. B.R. testified concerning a similar incident while spending the night at appellant’s house.
Appellant was found guilty of lewd or lascivious molestation of L.C. as charged pursuant to section 800.04(5), Florida Statutes. Because appellant was over 18 and his victim was less than 12 years old, the only sentences available were life imprisonment or at least 25 years’ imprisonment followed by a lifetime of probation or community control. § 775.082(3)(a)(4), Fla. Stat.
At sentencing, appellant’s counsel argued that the 25-year mandatory minimum sentence was appropriate because appellant was 61 years old; he would be in his 80’s if he survived the sentence; and upon release, he would be on lifetime sexual offender probation.[2] The trial court sentenced him to life. The State then nolle prossed the charges related to the other incidents.
In Adaway v. State, 902 So.2d 746 (Fla.2005), the Florida Supreme Court was asked to address whether a sentence of life imprisonment without the possibility of parole for a defendant found guilty of oral union with the vagina of a girl under the age of 12 constituted cruel and unusual punishment under either the United States Constitution or Florida Constitution. The court recognized the confusing state of the law in United States Supreme Court precedent regarding the constitutionality of long prison sentences. Id. at 748-49. The court, however, “read the decisions in So-lent, Ha/nnelin, and Ewing as requiring, for a prison sentence to constitute cruel and unusual punishment solely because of its length, that at a minimum the sentence be grossly disproportionate to the crime.” Id. at 750 (citing SoleM v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), and Ewing v. California, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003)).
The court in Adaway established some important concepts. The length of a sentence for a particular crime is generally a legislative prerogative. Id. at 750. Additionally, while a sentence may be perceived as harsh, the Legislature’s judgment about the gravity of a crime should generally be accepted, and the Legislature has determined that the sexual abuse of children requires harsh penalties. Id.
The Adaway court quoted a case from the Second District recognizing the need for strict deterrence to protect our children:
Child sexual predation is a serious concern. Even when it leaves no physical scars, it can create emotional damage that lasts a lifetime. There is evidence that victims of abuse can become abusers and that this crime can transmit its injuries across generations. Because victims hesitate to report this crime and *707 proof of the offense is often difficult to obtain, there is a risk that perpetrators ■will believe they can escape detectioh and punishment. As a result, there is a ,. need for a harsh penalty to act as a sufficient deterrent.
Id. at 750-51 (quoting Gibson v. State, 721 So.2d 363, 368-69 (Fla. 2d DCA 1998) (citing Charles A. Phipps, Children, Adults, Sex and the Criminal Law: In Search of Reason, 22 Seton Hall Legis. J, 1, 107 (1997))).
The court went on to recognize the severe harm that may be caused to , young victims of sexual abuse:
Researchers have identified a long list of harms caused by child sexual abuse, including “fears, anxiety, phobias, sleep and eating disturbances, poor self-esteem, depression, self-mutilation, suicide, auger, hostility, aggression, violence, running away, truancy, delinquency, increased vulnerability to rev-ictimization, substance abuse, teenage prostitution, and early pregnancy.” Frank W. Putnam & Penelope K. Trickett, Child Sexual Abuse: A Model of Chronic Trauma, 56 Psychiatry 82, 84 (1993); see also Kathleen A. Kendall-Tackett- et al., Impact of Sexual Abuse .on Children: A Review and Synthesis of Recent Empirical Studies, 113 Psychol. Bulletin 164, 165 (1993) (finding that seven factors stand out in sexually abused children as compared with, non-abused children: aggression, anxiety, depression, exter- ' nalizing, internalizing, sexualized behavior, and withdrawal). Research has further shown that certain adult psychiatric problems,' including eating disorders, personality disorders, and so-matization disorder (physical symptoms without medical explanation), can be directly related to child sexual abuse. See Putnam & Trickett, 56 Psychiatry at 83. Given this array of potentially lifelong harms associated with sexual abuse of children, we will not second- ■ guess- the -Legislature’s judgment -that -such a-crime warrants a lifelong penalty.
Id. at 751.
The court concluded its analysis by determining that Adaway’s offense was a substantially greater offense than other offenses for which the United States Supreme Court .has .upheld life sentences without the possibility of parole. Id. at 751.
This court specifically adopted the analysis set out in Adaway in Oyarvid v. State, 38 So.3d 854, 856 (Fla. 1st.DCA 2010), a case involving the lewd or lascivious molestation of a-child under 12 years of age, the same crime that is charged in this case. Oyarvid thus controls our decision in this case.
While one may argue that lewd or lascivious molestation does not rise to the level of other sexual assaults, it still involves an attack of a sexual nature on our most vulnerable citizens. It clearly may cause severe emotional 'distress to those victims. It also many times, as evidenced by the facts of this case, involves sexual predators who are willing to inflict harm on multiple children. Our decision in Oyarvid was correct. As the supreme court in Adaway, we are unwilling to second-guess the Legislature’s determination as to the level of deterrence and punishment necessary to address this type of crime. Thus, we AFFIRM.
RAY, J., concurs; BENTON J., concurs in part and dissents in part with opinion.

. In this case, unlike Yisrael v. State, 65 So.3d 1177 (Fla. 1st DCA 2011), cited by the dissent, which involved pending or uncharged crimes, the facts of the other crimes were pertinent and introduced at trial in this case. They demonstrated absence of mistake by appellant which is a permissible factor to be considered by the trial court in determining the appropriate sentence. The other incidents in this case are also demonstrative as to why the Legislature was within its constitutional discretion to impose a lengthy sentence for this type of criminal activity.

. While it is unclear to what extent a court may consider the facts of a particular case in the analysis of whether the sentence for a particular charge is considered to be cruel and unusual punishment, see Edwards v. State, 885 So.2d 1039 (Fla. 4th DCA 2004) (holding that "a proportionality analysis focuses on the crime charged and the legislatively imposed punishment for the crime, not the specific facts of a particular case”), the evidence of the surrounding circumstances presented at trial in this case would clearly support a lengthy term of years sentence which would put appellant in his eighties at the time of his release. Thus, any fact-specific analysis in this case would also fail.