*955 CONNER, J.,
concurring in part and dissenting in part.
I concur with the majority opinion, except for the reversal on the charge of grand theft of a motor vehicle and the certification of the proposed question of great public importance. I dissent as to both.
I disagree that there was insufficient evidence that the defendant knew the gray truck was stolen or that he had any involvement in its theft. There are additional facts in the record that are not discussed in the majority opinion. The surveillance videos at the business property from where the boats were stolen establish the perpetrators wore masks in the process of removing the boats from the business premises to another location nearby to detach the motors. The other perpetrators involved in the heist were men much younger than the defendant.
In closing argument, the defendant argued that the evidence failed to negate the hypothesis that he did not know what the others were doing and that he was innocently assisting acquaintances, while sitting in, and never getting out of, his truck at a location other than the business property from which the boats were removed. Additionally, he pointed out that he is an older man, and stealing several three-hundred-pound boat motors is a “young man’s game.”
As the State argued in closing argument, the evidence supported the conclusion that the defendant was part of a well-orchestrated plan to steal boats and boat engines that included stealing a truck and using the stolen truck to move the boats and engines off premises to another location nearby. Use of the stolen truck was necessary so that the perpetrators’ vehicles would not be caught on the multiple surveillance cameras at the business premises. Obviously, the perpetrators wanted to avoid identification and apprehension by wearing masks in the process of removing the boats and making sure that none of their vehicles were captured on camera until the cameras could be covered. The use of a stolen truck was necessary to avoid identification in the process of entering the business' property, as well as to anticipate the possibility that the perpetrators might miss covering one of the cameras with gloves while the heist was ongoing. Additionally, as the prosecutor argued, the defendant’s actions in blocking the deputy from coming around his vehicle while travelling closely behind the codefendant in' the gray truck supports an inference that the defendant did not want the deputy to see the tag on the gray truck nor get a good look at the gray truck in order to radio information to dispatch or fellow officers because the defendant knew the vehicle was stolen.[8] The combination of evidence refuted the defense’s assertion that the defendant was an innocent participant in the heist.
The defendant’s driving in a manner to block the deputy from getting behind, along, or in front of the gray truck also supports an inference that the defendant was assisting his codefendants in stealing the gray truck. “In the context of an automobile theft, [intent] would be shown, if not by aid or participation in the taking of the vehicle, then by some exercise of dominion and control over [the vehicle] afterwards.” G.C. v. State, 560 So.2d 1186, *956 1187 (Fla. 3d DCA 1990). The act of keeping the deputy away from the gray vehicle was evidence of the defendants exercise of dominion and control over the gray truck.
“ ‘In cases in which the evidence of guilt is wholly circumstantial, it is the trial judge’s task to review the evidence in the light most favorable to the State to determine the presence of competent evidence from which the jury could infer guilt to the, exclusion of all other inferences.’” Ballard v. State, 923 So.2d 475, 482 (Fla.2006) (quoting Crain v, State, 894 So.2d 59, 71 (Fla.2004)). Therefore, “[t]he , state is not required to rebut conclusively every possible variation of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the Defendant’s theory of events.” Kocaker v. State, 119 So.3d 1214, 1225 (Fla.2013) (quoting Durousseau v. State, 55 So.3d 543, 556-57 (Fla.2010)). The fact that a box of the same type of latex gloves used to cover the surveillance cameras was found in the truck the defendant was driving, coupled with (1) the manner of the defendant’s driving to thwart the deputy following him, (2) additional facts evincing an intent to use a stolen truck in the process of removing the boats from, the business property, and (3) other efforts to minimize the risk of detection and identification, rebuts any .reasonable hypothesis of innocence (lack of knowledge of what the others were doing and that the truck was stolen and involvement in taking the vehicle).
In my view, A.D. v. State, 106 So.3d 67 (Fla. 2d DCA 2013), relied upon by the majority, actually supports affirmance of the defendant’s grand theft of motor vehicle conviction. Although A.D.’s adjudication of delinquency as to theft of a minivan was reversed, the adjudication as to theft of an ATV (all-terrain vehicle) was upheld because the State provided proof that A.D, “demonstrated a deliberate pattern of conduct” so that his actions went beyond mere presence at the scene. Id. at 71.[9]
For the above reasons, I would affirm the conviction for grand theft of a motor vehicle.
For three reasons, I also dissent from certifying the question posed by the majority as being of great public importance: (1) the question and reasoning expressed as support for the question may be viewed by some as an attempt by the judiciary to expand its power of review in a way that ignores the separation of powers doctrine; (2) the reasoning in support of the question is premised upon an incorrect assumption that it is not appropriate to impose a maximum sentence (35 years), on a person 55 years of age with no prior record, after proceeding to trial in a case in which the State offered a plea bargain with a much lower prison sanction; and, (3) perhaps most disturbingly, the reasoning expressed as support for the question suggesting that constitutional principles should be expanded to correct arguably harsh sentences may be perceived as the majority suggesting, inferentially, that a systemic problem exists within the trial bench.
The question of great public importance posed by the majority asks our supreme court to entertain this case to analyze whether the Due Process Clause or *957 Eighth Amendment was violated by the sentences imposed in this case. The arguments and assertions appear to be inspired by a concern that two maximum, consecutive sentences, “in essence a de facto life sentence,” imposed on a 56-year-old defendant with no prior record for two felony theft offenses were unduly harsh. The direct assertion is that the sentences are grossly disproportionate and violate several of the principles embodied by section 921.002(1), Florida Statutes (2015), the Criminal Punishment Code. The indirect assertion is that the imposition of consecutive maximum sentences is arbitrary and capricious or the result of silent, improper, and unconstitutional sentencing considerations.
Although the specially concurring opinion, in discussing grossly disproportionate sentencing, suggests that there is an “evolving concept of the type of punishment that is cruel or unusual,” the only recent evolution of Eighth Amendment analysis announced by the United States Supreme Court has been in the area of juvenile sentencing. See Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010); Miller v. Alabama, — U.S. —, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). There has been no evolution of concept for adult sentencing. The last pronouncements by the Supreme Court of Eighth Amendment analysis discussing grossly disproportionate sentencing of adults are Ewing v. California, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) and Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). Also, the last pronouncement on the subject by the Florida Supreme Court is Adaway v. State, 902 So.2d 746 (Fla.2005).
Adaway gives a good analysis of the “thicket of Eighth Amendment jurisprudence” with regards to sentencing that is alleged to be grossly disproportionate, noting that the Supreme Court itself has not reached a majority consensus on the standard for determining the constitutionality of long prison sentences. Id. at 748. The court also noted that “[t]he first and only case in which the [United States] Supreme Court has invalidated a prison sentence because of its length was Solem v. Helm, 463 U.S. [277, 290, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) ].” Id. at 749. Especially significant to this case, the court said:
We read the decisions in Solem, Harmelin [v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) ], and Ewing [v. California, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) ] as requiring, for a prison sentence to constitute cruel and unusual punishment solely because of its length, that at a minimum the sentence be grossly disproportionate to the crime.
Id. at 750 (emphasis added).
What the specially concurring opinion overlooks, regarding the Eighth Amendment, is that “ ‘proportionality analysis focuses on the crime charged and the legislatively imposed punishment for the crime, not the specific facts of a particular case.' ” Peters v. State, 128 So.3d 832, 850 (Fla. 4th DCA 2013) (emphasis added) (quoting Edwards v. State, 885 So.2d 1039, 1039 (Fla. 4th DCA 2004)). Thus, the Eighth Amendment questions to be asked in this case are:[10]
(1) Is it grossly disproportional to impose a thirty-year sentence for the crime of grand theft where the value *958 of the property taken is $20,000 or more, but less than $100,000?
(2) Is it grossly disproportional to impose a five-year sentence for the crime of theft of a motor vehicle?
In answering the above questions, “[fjirst, a court must consider the ‘gravity of the offense and the harshness of the penalty.’ ” Wiley v. State, 125 So.3d 235, 240 (Fla. 4th DCA 2013) (quoting Andrews v. State, 82 So.3d 979, 984 (Fla. 1st DCA 2011)). It is hard to imagine that any judge in Florida would answer “yes” to either of the above questions. Certainly, such sentences are not “so excessive as to shock the judicial conscience.” Cf. Booker v. State, 514 So.2d 1079, 1085 (Fla.1987) (explaining that it would be an abuse of discretion to impose an upward departure sentence under the 1987 sentencing guidelines if the sentence was “so excessive as to shock the judicial conscience”).
It also appears imprudent to certify a question of great public importance in this case regarding the Eighth Amendment, because doing so ignores the separation of powers doctrine. What our supreme court stated in 1943 remains true today:
As a general rule, in cases where the objection is to the particular sentence, and not to the statute under which it has been imposed, a sentence which is within the limit fixed by statute is not cruel and unusual and is therefore valid, no matter how harsh and severe it may appear to be in a particular case, because the constitutional prohibition has reference to the statute fixing the punishment, and not to the punishment assessed by the jury or court within the limits fixed by statute. If the statute is not in violation of the Constitution, then any punishment assessed by a court or jury within the limits fixed thereby cannot be adjudged excessive, for the reason that the power to declare what punishment may be assessed against those convicted of crime is not a judicial power, but a legislative power, controlled only by the provisions of the Constitution.
Brown v. State, 152 Fla. 853, 13 So.2d 458, 461 (1943); See also O’Donnell v. State, 326 So.2d 4, 5 (Fla.1975).
The precision of the analysis in support of certifying a question of great public importance with regards to the Due Process Clause is not apparent to me. Seemingly, the argument is that the maximum sentences, perceived by the majority as unduly harsh, are the result of improper sentencing considerations, rather than adhering to the sentencing principles announced by the legislature for the Criminal Punishment Code. Without explicitly determining that there is no competent substantial evidence to support the statements of the trial court at sentencing, the majority is obviously skeptical that the trial court announced its true reason for imposing the maximum sentences on an older defendant with no prior record.[11]
In support of the certified question, the specially concurring opinion devotes one section to due process, consisting of four paragraphs. That section proposes a solution to our supreme court: follow the rec *959 ommendation of legal commentators who have suggested that trial judges explain the reasons for the length of their sentences. What is puzzling is that the trial court in this case did explain on the record why it did not agree with the State’s sentencing recommendation. Perhaps the majority is suggesting that trial judges should articulate reasons for the length of a sentence imposed that acknowledges consideration of, in detail or generally, the sentencing principles announced by the legislature for the Criminal Punishment Code.
An issue about which the specially concurring opinion seems concerned is silent improper sentencing considerations. By certifying a due process question to our supreme court, my assumption is the majority feels that a requirement by which trial judges articulate their reasons for imposing a sentence will allow appellate courts to discern whether silent improper sentencing factors are at play. Traveling down such a path is seriously problematic.
Similar to the discussion regarding the Eighth Amendment, adopting a due process requirement that trial judges articulate reasons for the sentence imposed, showing compliance with statutory sentencing principles, will effectively end-run section 924.06(l)(d) and (e), Florida Statutes (2015). Those sections provide:
(1) A defendant may appeal from:
[[Image here]]
(d) A sentence, on the ground that it is illegal; or
(e) A sentence imposed under s. 921.0024 of the Criminal Punishment Code which exceeds the statutory maximum penalty provided in s. 775.082 for an offense at conviction, or the consecutive statutory máxi-mums for offenses at conviction, unless otherwise provided by law.
§ 924.06(l)(d)-(e), Fla. Stat. (2015).
Such an end-run ignores the separation of powers doctrine. The practical outcome of such an expansion is to grant to all defendants and the appellate courts an opportunity to review the length of sentences — an opportunity which has never existed. I believe that expanded review of the length of sentences will create a tremendous influx of direct appeals and post-conviction appeals. Although appellate counsel have ethical and professional responsibilities to abstain from presenting frivolous appellate issues, I have no doubt that, in many cases, a defendant given a lengthy sentence will contend that the sentence was prompted by a silent improper sentencing consideration.
More importantly, allowing such an expanded opportunity for appellate review would be a mistake for practical reasons important to the individual case. There is sound reason for the fundamental rule of appellate decision-making that appellate courts defer to the facts, as determined by the trial judge. Trial judges operate in an environment which gives them the ability to evaluate reality, the accuracy of evidence and assertions, and the truth in ways which are not amenable to the appellate environment. Quite simply, trial judges are in a much superior vantage point to determine the appropriate weight of the evidence presented to them.
Additionally, imposing a due process requirement that judges announce reasons for long or disproportionate sentences which comport with statutorily approved sentencing considerations will do little to correct a problem of judges using silent, improper sentencing considerations. Any judge who is inclined to use silent, improper sentencing consideration for punishment will be able to articulate a logical *960 reason for the improper sentence, which facially includes one of more statutorily approved sentencing considerations, for which there is competent substantial evidence in the record. Giving appellate courts the authority to review claims of silent, improper sentencing considerations because a sentence is lengthy or arguably disproportionate will authorize appeals by the many to redress a harm that I contend is , experienced by far fewer defendants than the majority perceives. My fear is imposing an ineffective remedy will create more harm (the drain on judicial resources to. review of meritless claims) than it cures.
By certifying a question as one of great public importance, I completely disagree with the implicit assertion,' as well as some of the direct comments in the specially concurring opinion, suggesting that there is a systemic problem in the trial courts which needs correction by our supreme court. Nonetheless, even if there is a systemic problem with arguably harsh sentences, that problem is best explored, debated, and-resolved by the legislature, not the judiciary. •

. Although the majority opinion discusses that the deputy shined his "takedown” floodlights on the defendant’s truck, an additional fact not mentioned in the majority opinion is that the defendant was being pursued by the deputy at approximately 2:00 a.m. Darkness makes identification more difficult the more distance there is between vehicles. Thus, keeping the officer away from the stolen truck assisted the defendant in avoiding detection of that crime.

. Canady v. State, 813 So.2d 161, 161 (Fla. 2d DCA 2002), also relied upon by the majority, is factually dissimilar to this case and its brief discussion of legal principles offers little assistance in deciding this case. In Canady, the appellant was a passenger in a car that had been stolen, The one-page opinion does not discuss the facts in detail, but it appears there was no evidence, unlike this case, to directly or circumstantially show that the appellant was assisting in taking the vehicle.

. Our supreme court, following United States Supreme Court precedent, has determined that consecutive sentencing does not violate the Eighth Amendment. Hall v. State, 823 So.2d 757, 761-62 (Fla.2002).

. As argued by the state in this case, there are significant reasons why the defendant received a much longer sentence, as compared to his younger codefendant. The state offered a plea agreement to the codefendant, which was accepted. There is an indication in the record that the defendant and codefendant were both involved with a criminal enterprise stealing boats in more than one area of the state. Although the trial court at sentencing explicitly stated it was not factoring in other crimes with which the defendant may have been involved at the time, as the state points out, nothing in this record shows what plea offers were made to.the codefendant. It is not unusual for the state to offer significantly different plea offers to codefendants, in hopes one of them will “flip” on the others.