731 So.2d 816 (1999)
Leonard Alexander GRAY, Appellant,
v.
STATE of Florida, Appellee.
No. 98-1525.
District Court of Appeal of Florida, Fifth District.
April 30, 1999.
*817 James B. Gibson, Public Defender, and Janet Brook Goodrich, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Patrick W. Krechowski, Assistant Attorney General, Daytona Beach, for Appellee.
HARRIS, J.
Florida recognizes two types of reduced mental capacity defenses. First, there is the general insanity defense. This requires that the defendant, at the time of the offense, had a mental infirmity, disease or defect and that, because of such condition, he did not know what he was doing or the consequences of what he was doing or, if he knew, he did not know that what he was doing was wrong. This defense, if proven, excuses the defendant from responsibility for any criminal act.
Second, the law recognizes the more limited defense of voluntary intoxication. But here, the fact that the crime is committed because the intoxicant arouses passions, diminishes perceptions, releases inhibitions or clouds reason or judgment is not a defense. It is only when one is so intoxicated that he cannot form a statutorily required specific intent that a defense arises. Hence, voluntary intoxication is not a defense to a general intent crime.
In this case, Gray, after allegedly ingesting drugs and alcohol, attempted to *818 sexually assault a woman in a dressing area of a clothing store. He was eventually restrained by bystanders until the police arrived. He reacted violently when arrested. Gray was convicted of attempted sexual battery, two counts of aggravated assault, resisting arrest with violence, and battery.
Gray relied on the general insanity defense at trial. One expert found that Gray was insane at the time of the offenses. He testified that "at the time of the incident, I felt like he was intoxicated on cannabis and alcohol and cocaine." When asked whether Gray suffered from a mental infirmity, disease or defect, the expert responded: "I think it was more along the lines of an infirmity at that point in time because it was a temporary situation as a result of the substances that he was taking." The expert recounted an earlier occurrence in which Gray, after ingesting similar drugs, was stopped by the police while running around naked and attempted to assault a female officer. The expert observed: "This is kind of the way the man reacts to those particular types of chemicals."
Although the expert applied the M'Naghten standard and found that Gray did not know what he was doing or the consequences of what he was doing and did not know right from wrong, it was because of the drugs voluntarily taken by him on that evening. Hence, the defense seems to be asserting a voluntary insanity defense. The problem is that Florida does not recognize such a defense.[1] Just imagine how such a defense would affect driving under the influence related offenses. "I'm sorry they're all dead, but I was too drunk to know it was wrong to drive."
The state's expert continues this commingling of the defenses of insanity and voluntary intoxication by testifying that because of the level of intoxication at the time of the offense, Gray did suffer a mental infirmity, but that even in that condition he knew the difference between right and wrong and was legally sane.
Gray appeals because throughout the trial and during his argument, the prosecutor emphasized the fact that Gray elected to become intoxicated and thus voluntarily entered into his uncontrollable state. Gray contends that this argument denigrates his insanity defense. He relies on Rosso v. State, 505 So.2d 611 (Fla. 3d DCA 1987), in which the court reversed a conviction because the state had argued, in effect, that the insanity defense was being used to avoid responsibility. And he relies on Taylor v. State, 640 So.2d 1127 (Fla. 1st DCA), rev. denied, 649 So.2d 235 (Fla. 1994), in which the court reversed because the state asked the jury to decide whether the defendant was temporarily insane or whether the insanity defense was merely a "copout." In both these cases, however, the state was challenging the defense being relied on by defendant.
In our case, by repeatedly reminding the jury that Gray had intentionally become intoxicated, a pre-condition of the defense of voluntary intoxication, the state may have denigrated the defense of voluntary intoxication, but this defense was not asserted by defendant. The state's argument properly pointed out that the cause of Gray's not knowing what he was doing or the consequence of what he was doing or not knowing that what he was doing was wrong was not because of a mental infirmity, disease or defect; it was because he voluntarily got drunk, a condition which did not constitute insanity.
Perhaps the defense of insanity, instead of voluntary intoxication, was raised in this case because of the trial strategy of having a defense that would also apply to the felony count of resisting arrest with violence, a general intent crime. Whatever *819 the reason, the state's response was not improper under the circumstances.
AFFIRMED.
ANTOON, J., concurs.
GOSHORN, J., concurs in result only.
NOTES
[1] Florida does recognize a defense of insanity super-induced by the long and continued use of intoxicants so as to produce "a fixed and settled frenzy or insanity either permanent or intermittent." See Cirack v. State, 201 So.2d 706 (Fla.1967). That was not the testimony in this case. Here, the defense expert testified, at most, to serial voluntary intoxication.