860 So.2d 509 (2003)
Jason A. KILEY, Appellant,
v.
STATE of Florida, Appellee.
No. 4D02-4910.
District Court of Appeal of Florida, Fourth District.
December 3, 2003.
Steven Wisotsky of Steven Wisotsky, P.A., Miami, for Appellant.
No appearance required for Appellee.
FARMER, C.J.
In his motion for a written opinion, defendant inferentially argues that it is per se ineffective assistance of counsel (IAC) to fail to seek a competency hearing for a defendant who claims total amnesia about the crime for which he has been charged. That being so, he claims that it is per se error for a post-conviction relief judge to fail to order an evidentiary hearing on his IAC claim. We disagree.
As the court did in Mauldin v. State, 382 So.2d 844 (Fla. 1st DCA 1980), we conclude that "amnesia, in and of itself, does not, per se, render [defendant] incapable of standing trial or of receiving a fair trial." 382 So.2d at 846. In the same vein is State v. Cooks, 642 So.2d 23 (Fla. 5th *510 DCA 1994), which held that defendant's amnesia regarding events of crime did not mandate that he be found legally incompetent to stand trial. If amnesia does not automatically equal incompetency to stand trial, then defendant would be required to relate the amnesia to the facts and circumstances of the case and a specific defense.
That being so, it was up to defendant to make a prima facie showing in his petition for post-conviction relief that his trial amnesia affected the outcome in some way. In this case, defendant did not do so. Consequently, defendant has failed to satisfy the requirement that he state initially how counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that the outcome would have been different without the ineffectiveness. Strickland v. Washington, 466 U.S. 668, 687-90, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Defendant's contention that his claim of amnesia alone required a competency hearing before or during trial and that the failure to request such a hearing is per se IAC is simply not supported by the cases he has cited. See Cooper v. Oklahoma, 517 U.S. 348, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996); Medina v. California, 505 U.S. 437, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992); Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). It is obvious that a claim of amnesia can be faked and fool even psychiatric experts. Thus the refusal to make use of the claimed condition can reasonably fall within trial tactics of counsel and be ineligible for an IAC claim. As we just said, a post-conviction claim of IAC must suggest how defense counsel's use of the amnesia in a request for a competency hearing would probably have led to a different result.
At bottom, defendant's amnesia-competency as a basis for a post-conviction IAC claim masks an attempt to cast his voluntary use of drugs before the crime as substitute for a defense of temporary insanity. He repeatedly refers to his "drug-induced delirium" at the time of the crime, saying that he did not know right from wrong when he killed the victim. He contends that his drug-induced delirium was a mental defect justifying the insanity defense.[1] Such an attempt impermissibly blurs the line between the general insanity defense and what was once a proper defense of voluntary intoxication.
In Gray v. State, 731 So.2d 816 (Fla. 5th DCA 1999), Judge Harris distinguished between a general insanity defense and the temporary condition associated with drug or alcohol intoxication:
"the fact that the crime is committed because the intoxicant arouses passions, diminishes perceptions, releases inhibitions or clouds reason or judgment is not a defense. It is only when one is so intoxicated that he cannot form a statutorily required specific intent that a defense arises. Hence, voluntary intoxication is not a defense to a general intent crime."
731 So.2d at 817.
The Gray case has particular application here because of the strong similarities in the facts and purported defense. In Gray, defendant ingested cannabis, alcohol and cocaine and then attempted to assault a woman in a department store dressing *511 room. He was restrained by bystanders and resisted police when they arrived. Here, after a night of drinking and consuming Xanax, Kiley bludgeoned the 21 year-old victim to death with a two-by-four. Kiley had known the victim for a couple of years and socialized almost every day.[2]
At trial Gray attempted, as Kiley does here, to rely on a general insanity defense predicated on the situational effects of voluntary drug ingestion. As here, Gray offered an expert who opined that the drug intoxication rendered him temporarily incapable of knowing what he was doing or that his conduct was wrong. The Gray court explained:
"Although the expert applied the M'Naghten standard and found that Gray did not know what he was doing or the consequences of what he was doing and did not know right from wrong, it was because of the drugs voluntarily taken by him on that evening. Hence, the defense seems to be asserting a voluntary insanity defense. The problem is that Florida does not recognize such a defense. Just imagine how such a defense would affect driving under the influence related offenses. `I'm sorry they're all dead, but I was too drunk to know it was wrong to drive.'"
731 So.2d at 818. As Judge Harris summed up:
"The state's argument properly pointed out that the cause of Gray's not knowing what he was doing or the consequence of what he was doing or not knowing that what he was doing was wrong was not because of a mental infirmity, disease or defect; it was because he voluntarily got drunk, a condition which did not constitute insanity."[3]
731 So.2d at 818. That analysis applies equally to defendant's post-conviction claim in this case and adequately explains why the trial judge did not err in failing to hold an evidentiary hearing on his amnesia-competency claim.
AFFIRMED.
KLEIN and GROSS, JJ., concur.
NOTES
[1] His trial counsel properly acknowledged that voluntary intoxication was not a defense to the general intent crime of second degree murder. Gray v. State, 731 So.2d 816 (Fla. 5th DCA 1999). The voluntary intoxication defense to specific intent crimes was subsequently repealed, with a narrow exception, for crimes committed on or after October 1, 1999. § 775.051, Fla. Stat. (1999).
[2] Kiley and a co-defendant were involved in an altercation with some "homeless" people in a parking lot of a McDonald's. Although present, the victim did not become physically involved in the altercation. After the fight had broken up and the homeless people were leaving, Kiley and the co-defendant turned on the victim for not helping them fight. After kicking and punching him to the ground, Kiley removed a two-by-four supporting a newly planted palm tree and began striking the victim. The homeless people observed what was happening and called police. The co-defendant fled as the sound of police sirens approached. Kiley continued to drive the two-by-four in a pile-driver fashion into the victim's head. According to the testimony of the eyewitnesses, the beating continued for about fifteen minutes. The first officer arrived on the scene in a stealthy fashion, with his headlights off and saw Kiley standing over the victim driving the board into his head and chest with all his might. The officer drew his weapon and order Kiley to stop. Kiley looked at the officer and inflicted one more blow. The officer was in the process of pulling the trigger of his firearm when Kiley threw the board aside and began to flee. The officer was forced to use pepper spray, which did not have an immediate effect on Kiley, and his baton to subdue Kiley, who yelled obscenities at the officer.
[3] The Gray court also distinguished the kind of defense both Gray and Kiley seek to raise with a different intoxication defense that would be permissible if the facts warranted. In the permissible defense the defendant must show that his long term and continued use of intoxicants produced a "a fixed and settled frenzy or insanity either permanent or intermittent." Gray, 731 So.2d at 818; see also Cirack v. State, 201 So.2d 706 (Fla.1967).