904 So.2d 432 (2005)
Charlie GIBBS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D03-920.
District Court of Appeal of Florida, Fourth District.
February 23, 2005.
*433 Michael D. Gelety, Fort Lauderdale, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Don M. Rogers, Assistant *434 Attorney General, West Palm Beach, for appellee.

ON MOTION FOR REHEARING
WARNER, J.
We deny the motion for rehearing, withdraw our previously issued opinion and substitute the following in its place.
Appellant, Charlie Gibbs, appeals his judgment and sentence for second degree murder. He raises four issues: (1) whether the state failed to prove the depraved mind element of second degree murder; (2) whether prosecutorial misconduct denied him a fair trial; (3) whether the court erred in admitting irrelevant, prejudicial evidence; and (4) whether the court erred in giving a jury instruction that amounted to an improper judicial comment on voluntary intoxication, eliminating his sole defense. We find that the court did not reversibly err on any of these issues and affirm.
Gibbs got off work at McDonald's and met Diaz, a friend. He told his friend he felt like fighting. The two became highly intoxicated after drinking and taking drugs throughout the night. Gibbs had an ongoing dispute with Matt Baker, the son of victim Debra Baker. Earlier in the week, Matt had threatened Gibbs, accusing him of slashing tires on the family's car. Gibbs decided to confront Matt that night. Because he was afraid of Matt, he retrieved his father's pistol and put it into his waistband. The gun was loaded and cocked.
Another friend of Gibbs, Meyers, lived across the street from the Bakers, and Gibbs and Diaz went to Meyers's home where several other friends were partying. Gibbs left Meyers's house around 3 a.m., walked across the street, and knocked on Matt's door. Debra Baker and her husband, Matt's parents, answered the door. Gibbs asked to see Matt, and Debra told him to get off of their property. An argument ensued, with the Bakers advancing and Gibbs backing up from the front door of the house to a tree in the front yard.
At that point, some of Gibbs's other friends arrived and witnessed the argument. They heard Debra tell Gibbs, "[G]et out of here you're drunk." They tried to pull Gibbs away, but he was not listening. Gibbs pulled the gun from his pants. When one of the friends saw the gun, she grabbed Gibbs around the waist without touching his arms. She used enough force to make him fall to the ground, and as she grabbed him the gun went off. A neighbor across the street who heard the commotion heard Gibbs yell at Debra, "I'm going to f ....g kill you." At that moment she saw Gibbs raise his hand and shoot Debra who was four or five feet away. Gibbs and his friends then jumped into their cars and sped off. Debra died of her injuries.
Gibbs was apprehended by the police and after being advised of his rights, agreed to speak to them. The interviewing detective testified that in the first statement he asked Gibbs if he was in fear for his life or if the Bakers had any weapons. Gibbs said no. The officer testified that during the first statement, "[B]asically [Gibbs] stated  this is according to him. Debra started getting on his nerves and she was bitching like a typical female." At that time he said he removed the gun from his waistband and shot her in the face.
The detective then decided to get the statement on tape. In the taped statement Gibbs admitted that he had decided to go fight Matt to "get it over with." He denied intending to pull the gun out and stated that he did not intend to hurt Debra. He said that when he arrived at the home, Debra started cursing at him, and she and her husband kept coming closer to him. Gibbs pulled the gun out and told *435 them to back up. The officer said, "She was bitching, getting on your nerves, Right?" Gibbs said, "Just like a female." Later, he repeated that he remembered going to the door and then remembered "bitching....Just like hearing his mother." He also admitted that he might have said, "[I]f you don't back up, I'll shoot you." However, he maintained that he did not intend to shoot and just remembered the gun going off.
Gibbs's theory of defense was that he was impaired, and the shooting was an accident, occurring as he fell or was pulled away. The jury rejected the accident theory and convicted him of second degree murder.
Gibbs argues the trial court erred when it denied his motion for judgment of acquittal because the state failed to prove the depraved mind element of second degree murder. Second degree murder is "[t]he unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual." § 782.04(2), Fla. Stat. (2000).
Pointing a loaded gun at the head of the victim and then firing has frequently been held to be an act "imminently dangerous to another and evincing a depraved mind regardless of human life." See Keltner v. State, 650 So.2d 1066, 1067 (Fla. 2d DCA 1995) (finding the act of pointing loaded weapon in direction of someone and firing is imminently dangerous and evinces a depraved mind); Presley v. State, 499 So.2d 64 (Fla. 1st DCA 1986) (finding act of approaching vehicle, taking out gun, and shooting into vehicle window supported second degree murder conviction); Dellinger v. State, 495 So.2d 197 (Fla. 5th DCA 1986) (finding act of pointing rifle at wife without knowing whether it was loaded and pulling trigger was sufficient to demonstrate depraved mind); Edwards v. State, 302 So.2d 479, 480-81 (Fla. 3d DCA 1974) (finding act of pointing loaded gun at victim and then firing is imminently dangerous to human life and evinces a depraved mind); Hines v. State, 227 So.2d 334, 335-36 (Fla. 1st DCA 1969) (finding act of pointing gun at victim and making remarks, even though joking, that suggested defendant would shoot victim "like a squirrel" is evidence of a corrupt disregard for human life and intentional nature of shooting). Not only was there eyewitness evidence that Gibbs pulled the gun out and pointed it at Debra, but Gibbs himself admitted that he might have said, "If you don't back up, I'll shoot you." Consistent with the foregoing cases, there was evidence sufficient to prove the elements of second degree murder.
As his second ground for reversal, Gibbs argues that prosecutorial misconduct in closing argument requires a new trial. He focuses on the prosecutor's multiple references to Gibbs's statement that Debra was "bitching like a typical female" and suggesting that is why he shot her. While Gibbs suggests that this comment was taken out of context, we disagree. Whether that was the reason he shot Debra, he certainly said that he heard bitching and that Debra was getting on his nerves. The interviewing detective testified that Gibbs said in the interview prior to the taped statement that Debra was "bitching like a typical female." Further, in the taped statement, when the detective asked Gibbs whether Debra was "bitching, getting on your nerves," Gibbs responded, "Just like a female."
Gibbs complains that this argument was particularly harmful because of the all female jury. Despite this fact, the prosecutor was entitled to argue to the jury the relevant evidence and to suggest *436 that this comment showed ill will towards the victim. The prosecutor's remarks were not objected to and would have to constitute fundamental error to merit reversal. Gibbs has not cited any cases, nor could we find any, which have held that unobjected statements in closing argument regarding relevant evidence may be fundamental error simply because of jury composition. We conclude the statements were not error, and certainly not fundamental error. We also conclude that the other statements to which Gibbs has pointed in the prosecutor's closing argument do not constitute error.
The prosecutor was allowed to play the tape of the 911 call the night of the incident over Gibbs's objection as to relevance and that the prejudicial effect of the evidence outweighed its probative value. The tape consisted of a call by one of the neighbors relating events as they occurred right after the shooting. On it, Debra's husband pleaded for help for Debra as she lay dying.[1] The court listened to the tape prior to its admission and overruled the objection.
Gibbs argues that the prejudicial effect of this evidence outweighs its probative value because of the emotional impact of the evidence. Where the trial court has weighed the probative value against the prejudicial impact, that decision will not be reversed absent a clear abuse of discretion. See Trees v. K-Mart Corp., 467 So.2d 401, 403 (Fla. 4th DCA 1985). The prosecutor used the tape as some evidence to disprove Gibbs's suggestion that the shooting was an accident in that it proved that he fled after the shooting, leaving a dying victim. It showed the context and time sequence of the events immediately following the shooting. "The trial court has broad discretion in determining the relevance of evidence and such determination will not be disturbed absent an abuse of discretion." Heath v. State, 648 So.2d 660, 664 (Fla.1994). The tape contained emotional outbursts by the husband as his wife lay dying. However, the trial judge did not conclude that this show of emotion outweighed the probative value of the tape.
The tape was admitted on the second day of trial, and the trial continued for several more days, thus dissipating its emotional impact by the time the jury deliberated. Gibbs's counsel first brought up the 911 tape in closing argument, not the state. He told the jury it was emotional but to disregard it. He then castigated the state for playing the tape and not calling the husband as a witness, suggesting that the jury did not hear from witnesses with knowledge of the issues.
In its closing argument, the state simply said that the tape was admitted to corroborate the fact that Gibbs left after shooting the victim, thus contradicting the defense claim of accident. After retiring, the jury asked questions about pieces of evidence and, later, requested reinstruction on manslaughter. There is absolutely no indication that the jury was overcome by emotion but instead carefully weighed the evidence. We conclude that the trial court did not abuse its discretion in admitting the 911 tape.
For the same reasons we also reject Gibbs's objection to the admission of the medical examiner's testimony explaining the cause of death and trajectory of *437 the bullet, as well as the autopsy photos used by the medical examiner. While Gibbs insists that the evidence was inadmissible because he admitted most of the facts, he overlooks the state's response to his claim that the shooting was an accident. The trajectory of the bullet would provide some evidence on this issue. Moreover, "[i]t is immaterial that there was no dispute regarding the occurrence of the crime or the cause of death because `[a] defendant cannot, by stipulating as to the identity of a victim and the cause of death, relieve the State of its burden of proof beyond a reasonable doubt.'" Engle v. State, 438 So.2d 803, 809 (Fla.1983) (quoting Foster v. State, 369 So.2d 928, 930 (Fla.1979)). We conclude that he has shown no reversible error.
Finally, Gibbs argues that the court erred in instructing the jury that voluntary intoxication is not a defense to any offense proscribed by law. He argues that the instruction amounted to an improper judicial comment and eliminated his sole defense, which was that his extreme intoxication went to his degree of guilt. We disagree.
As of October 1, 1999, the Florida Legislature eliminated the defense of voluntary intoxication. § 775.051, Fla. Stat. (1999); Lewis v. State, 817 So.2d 933, 933 (Fla. 4th DCA 2002). The trial court's instruction tracked the language of section 775.051. While Gibbs argues that the instruction constituted a comment on the evidence, it was a correct statement of the law. Intoxication could not be used to suggest that he lacked the necessary mental state to commit the crime. We deem Gibbs's argument that intoxication could be used to suggest that the incident was an accident as opposed to a crime that occurred out of ill will is tantamount to an argument that voluntary intoxication negated the intent necessary to convict Gibbs of second degree murder. As second degree murder is a general intent crime, voluntary intoxication is not a defense to the charge even without the effect of the statute. See Kiley v. State, 860 So.2d 509, 510 n. 1 (Fla. 4th DCA 2003).
In Barrett v. State, 862 So.2d 44 (Fla. 2d DCA 2003), the trial court allowed Barrett to present evidence of his intoxication, but, pursuant to section 775.051, it did not allow him to argue or present expert testimony that his intoxication prevented him from forming the requisite mental intent to commit first degree murder. The court instructed the jury that voluntary intoxication is not a defense and could not be considered when determining whether Barrett acted with premeditation. Barrett appealed, and the district court held that section 775.051 was constitutional and did not deprive him of due process.[2] 862 So.2d at 48. Just as in Barrett, it was not improper for the court in this case to instruct the jury that voluntary intoxication was not a defense to the crimes for which Gibbs was charged.
Affirmed.
STONE, J., and BRYAN, BEN L., JR., Associate Judge, concur.
NOTES
[1] Gibbs also complains that in the middle of playing the tape for the jury, Debra's brother was overcome with emotion and left the courtroom. He suggests that this added to the prejudicial effect of the 911 tape. However, when this was brought to the attention of the trial court, the court, having observed the jury, stated that he did not see any juror turn to see the brother exit. Therefore, the court denied Gibbs's objection.
[2] We have also held the statute constitutional. Cuc v. State, 834 So.2d 378 (Fla. 4th DCA), review denied, 847 So.2d 975 (Fla.2003).