POLEN, J.
Appellant, Eric Wiley, appeals his judgment, convicting him of second-degree and third-degree murder, and sentencing him to life in prison. We vacate Wiley’s conviction for second-degree murder and remand for resentencing on Wiley’s conviction for third-degree murder.
Wiley was charged by information with: Count I (second-degree murder of Dwight Starks); Count II (third-degree murder of Dwight Starks); Count III (aggravated battery of Aaron Stoudemire with a firearm); Count IV (aggravated assault of Aaron Stoudemire with a firearm); and Count V (possession of a firearm by a convicted felon). On January 11, 2008, Wiley learned that his sister Rosica (“CC”) Mosely and Aaron Stoudemire were involved in a domestic dispute. Karen Dar-velle, a member of Wiley’s church, testified that on the day in question she was at church, and that Wiley was at the church with a man named Peter Clark. She was talking to Wiley when he received a phone call. She then heard Wiley say, he “don’t like no trouble.” Wiley and Clark then left in Wiley’s SUV. Upon arriving at CC’s house, Wiley got out of the SUV and confronted Stoudemire with a gun in his hand. Subsequently, the gun discharged resulting in the death of Dwight Starks.[1] Three eyewitnesses to the shooting testified: Wiley, Aaron Stoudemire (the first cousin of Starks), and Brandon Christie (Stoude-mire’s friend).
Stoudemire testified to the following. He and CC had an argument about a cell phone and it became physical. The argument then continued outside, and about five minutes later, he saw Wiley running at him with a gun in his right hand. Wiley told' him, “lay down, I’m going to kill you.” *590 Wiley then hit him in the head with the gun and the gun went off. Stoudemire testified that when Wiley struck him in the head with the gun, Wiley’s finger was on the trigger. Christie testified that when he saw Wiley hit Stoudemire on the side of the head with the gun, the gun went off. Christie further testified that he did not see anyone struggle over the gun.
On the same day, Detective Gerwan spoke with Wiley in an interview room at the Stuart Police Department. At trial, the recording from the interview was admitted into evidence. During the interview, Wiley stated that Stoudemire was punching CC when he arrived, that he saw blood on CC’s shirt, and that CC’s mouth was bleeding. However, Wiley did state that CC was going inside when he pulled up to the house. Wiley also admitted that he didn’t see a gun in Stoudemire’s hand. Regarding the shooting, Wiley stated that while he and Stoudemire were fighting, the gun fell out, and when he retrieved the gun, it discharged while Stoudemire was trying to take the gun from him. When he heard Starks was dead, Wiley said he felt bad and turned himself in.
Other testimony was also presented at trial. CC testified that she was in the house watching TV for five to ten minutes when she heard about the shooting; she did not see what happened outside. She did testify, however, that Wiley and Stoud-emire were friendly and never saw them argue. Michael James Duhart testified that he was doing lawn work on his mother’s property with his son, when he noticed a man emerge from a tan SUV. with a black semi-automatic in his hand and heard the man say: “What the F is the problem here?” As he saw the man raise the gun up, he made a rapid exit. He then heard three rapid gun shots. Duhart’s son testified that he saw a man take a gun from behind his back and raise it up. A couple of minutes, after he lost sight of the man, he heard gun shots.
Mark Chapman, Firearm Examiner, Indian River Crime Laboratory, testified that the firearm[2] has three safeties, and in order for this weapon to accidently fire, all three would have to malfunction. Chapman further testified that assuming that all the safeties were working properly, one would have to pull the trigger for the firearm to discharge. Chapman found no reason to believe that the safeties were not working properly and testified that the gun would not discharge from being dropped or from blunt trauma.-
Wiley moved for a judgment of acquittal as to Count I and Count II, arguing that the State failed to negate that the death of Starks was an accident. The trial court denied the motion. Wiley was then convicted on all five counts and sentenced to life in prison on Count I. No sentence was imposed for Count II.
On appeal, Wiley argues the trial court erred in denying his motion for judgment of acquittal because the State failed to establish that the killing was not accidental or that Wiley acted with a depraved mind. We agree with Wiley that his conviction for second-degree murder should be reversed. However, as we find no error in Wiley’s conviction for third-degree murder, we remand for the trial court to re-sentence Wiley for third-degree murder.
The standard of review on a motion for judgment of acquittal is de novo. Johnston v. State, 863 So.2d 271, 283 (Fla.2003). Generally, an appellate court will not reverse a conviction that is supported by competent substantial evidence. Id. A motion for judgment of acquittal should be granted in a circumstantial evidence case if *591 the State fails to present evidence from which the jury can exclude every reasonable hypothesis except that of guilt. Id. In meeting its burden, the State is not required to “rebut conclusively, every possible variation of events” which could be inferred from the evidence, but must introduce competent evidence which is inconsistent with the defendant’s theory of events. Id. Once the State meets this threshold burden, it becomes the jury’s duty to determine whether the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt. Id. However, “[t]he United States Constitution requires that criminal convictions must rest upon a determination that the defendant is guilty beyond a reasonable doubt of every element of the crime with which he has been charged.” Michelson v. State, 805 So.2d 983, 985 (Fla. 4th DCA 2001) (citing State v. Harbaugh, 754 So.2d 691, 694 (Fla.2000)).
Section 782.04(2), Florida Statutes (2008), provides:
The unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, is murder in the second degree ....
In the context of second-degree murder, an act is imminently dangerous to another and evinces a “depraved mind” if it is an act or series of acts that: (1) a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another; and (2) is done from ill will, hatred, spite or an evil intent; and (8) is of such a nature that the act itself indicates an indifference to human life. Bellamy v. State, 977 So.2d 682 (Fla. 2d DCA 2008); Michelson, 805 So.2d at 985. However, “extremely reckless behavior itself is insufficient from which to infer any malice. Moreover ... an impulsive overreaction to an attack or injury is itself insufficient to prove ill will, hatred, spite, or evil intent.” Light v. State, 841 So.2d 623, 626 (Fla. 2d DCA 2003); McDaniel v. State, 620 So.2d 1308 (Fla. 4th DCA 1993); Williams v. State, 674 So.2d 177, 178 (Fla. 2d DCA 1996). Further, “[ajlthough exceptions exist, the crime of second-degree murder is normally committed by a person who knows the victim and has had time to develop a level of enmity toward the victim,” and “[h]atred, spite, evil intent, or ill will usually require more than an instant to develop.” Light, 841 So.2d at 626.
The State relies on Gibbs v. State, 904 So.2d 432, 435 (Fla. 4th DCA 2005). In Gibbs, this court held that pointing a loaded gun at the head of the victim and then firing is an act imminently dangerous to another and evincing a depraved mind regardless of human life and sufficient evidence to prove second-degree murder. However, this case is factually distinguishable from Gibbs. Here, the evidence failed to prove that Wiley acted with a depraved mind and with an indifference to human life, the second and third prongs under Bellamy.
First, CC testified that she considered Wiley and Stoudemire to be friendly with one another, there was no other evidence to establish the hatred and spite requirements of a depraved mind. Second, although Gibbs holds that pointing a gun at an individual and then firing evinces a depraved mind, according to the three eyewitnesses to the shooting, this is not what happened in this case. Stoudemire and Christie both testified that Wiley hit Stoudemire over the head with the gun and the gun discharged. Wiley claimed that there was a scuffle and that the gun discharged in Wiley’s attempt to secure the gun. In either situation, the factual *592 scenario does not establish that Wiley acted with a depraved mind or with an indifference to human life, two requirements necessary to sustain a conviction for second-degree murder. Although a person of ordinary judgment would know that hitting another over the head with a loaded gun is reasonably certain to do serious bodily injury to another, it is not an action evincing a depraved mind or of such a nature that the act itself indicates an indifference to human life. Thus, we hold that Wiley’s conduct was less a result of malice and more of extremely reckless behavior, which is insufficient from which to infer any malice.
The jury also convicted Wiley of third-degree murder. If an aggravated battery results in death, it can be third-degree murder. Sheridan v. State, 799 So.2d 223, 225 (Fla. 2d DCA 2001); see also Elkin v. State, 636 So.2d 570 (Fla. 3d DCA 1994); Garcia v. State, 574 So.2d 240, 241 (Fla. 1st DCA 1991); Johnson v. State, 423 So.2d 614, 615 (Fla. 1st DCA 1982). We find the evidence sufficient to sustain Wiley’s conviction for third-degree murder. Therefore, we vacate Wiley’s conviction for second-degree murder, and remand this matter to the trial court to sentence Wiley for his conviction of third-degree murder.

Reversed and remanded for further proceedings consistent with this opinion.

GROSS, C.J., and DAMOORGIAN, J., concur.

. There is no dispute that Starks had nothing to do with the dispute between Wiley, Stoude-mire and Mosely, and was standing some distance away when Wiley struck Stoudemire with the gun.

. A Glock model 23 .40 caliber semi-automatic pistol.