GROSS, J.
Eric Wiley, a habitual felony offender, appeals his sentence for third-degree murder to life imprisonment, with a twenty-five (25) year mandatory minimum, pursuant to Florida’s 10/20/Life statute. We affirm, holding that the sentence was both *237 constitutional and in conformity with the applicable statutes.
Wiley was charged by information with (1) the second-degree murder of Dwight Starks, (2) the third-degree murder of Dwight Starks, (3) aggravated battery with a firearm on Aaron Stoudemire, (4) aggravated assault with a firearm on Aaron Stoudemire, and (5) possession of a firearm by a convicted felon. At trial, two eyewitnesses testified that Wiley, during a heated exchange, hit Stoudemire on the head with his gun, causing the gun to discharge and kill Starks. Wiley v. State, 60 So.3d 588, 589-90 (Fla. 4th DCA 2011). Wiley contended, in a statement to the police, that “while he and Stoudemire were fighting, the gun fell out, and when he retrieved the gun, it discharged while Stoudemire was trying to take the gun from him.” Id. at 590.
Following a jury trial, Wiley was convicted of all five counts and sentenced to life imprisonment for second-degree murder pursuant to the 10/20/Life statute. Id.
On appeal, this court held that the evidence demonstrated only an accidental shooting, thereby negating the necessary depraved mind required for second-degree murder. We vacated his “conviction for second-degree murder and remand[ed] for resentencing on Wiley’s conviction for third-degree murder.” Id. at 589.

Resentencing

On remand, the trial'court conducted a resentencing hearing for the third-degree murder conviction. Defense counsel agreed that, based on the findings from the previous sentencing hearing, Wiley qualified as a habitual felony offender. The State additionally requested that the trial judge impose a life sentence pursuant to the 10/20/Life statute since Wiley had fired a gun and taken Starks’ life.
In response, defense counsel argued that such a sentence would be inappropriate since the shooting “was an accident” and “there was no evidence put forth at trial to say that he had any intent to shoot Mr. Starks.” Under defense counsel’s view, section 775.087(2)(a)3., Florida Statutes (2009), should not apply since an accidental shooting falls outside of the statute.
The trial judge rejected the defense argument, finding that, since Wiley’s decision to bring a gun escalated the encounter, “an accidental discharge while hitting somebody in the commission of that felony, aggravated battery ... [is] exactly why the 10-20-Life was enacted.” In conjunction with the determination that Wiley was a habitual felony offender, the trial judge, pursuant to the 10/20/Life statute, sentenced Wiley to life in prison with the requirement that he serve a mandatory minimum imprisonment of 25 years.
I
In his first issue on appeal, Wiley contends that Florida’s 10/20/Life statute is intended to apply to “violent criminals who use (that is intentionally discharge firearms) not for accidental discharges.” This argument misconceives the primary purpose of the 10/20/Life statute, which is to induce criminals to leave their guns at home.

Standard of Review

The construction and application of a statute is an issue of law subject to de novo review. See Boca Airport, Inc. v. Fla. Dep’t of Revenue, 56 So.3d 140, 142 (Fla. 4th DCA 2011) (citations omitted). In construing a statute, the goal of the appellate court is to “give effect to the Legislature’s intent.” Daniels v. Fla. Dep’t of Health, 898 So.2d 61, 64 (Fla.2005). However, when the statute is clear and unambiguous, the appellate court “-will *238 not look behind the statute’s plain language for legislative intent or resort to rules of statutory construction to ascertain intent.” Id.

Florida’s 10120/Life Statute

Section 775.087(2)(a), Florida Statutes (2009), also known as Florida’s 10/20/Life statute, sets forth the minimum penalties for defendants convicted of enumerated offenses where the defendant has possessed and/or discharged a firearm or destructive device. Actual possession of a firearm requires a ten-year or three-year mandatory minimum sentence depending on the type of offense. See § 775.087(2)(a)l., Fla. Stat. (2009). Discharge of a firearm requires a twenty-year mandatory minimum sentence. See § 775.087(2)(a)2., Fla. Stat. (2009). Section 775.087(2)(a)3., the section at issue here, provides as follows:
3. Any person who is convicted of a felony or an attempt to commit a felony listed in sub-subparagraphs (a)l.a.-q., regardless of whether the use of a weapon is an element of the felony, and during the course of the commission of the felony such person discharged a “firearm” or “destructive device” as defined in s. 790.001 and, as the result of the discharge, death or great bodily harm was inflicted upon any person, the convicted person shall be sentenced to a minimum term of imprisonment of not less than 25 years and not more than a term of imprisonment of life in prison.
(Emphasis added).
Under this statute, regardless of whether the underlying crime is a first, second, or third degree felony, once a defendant falls within the purview of the statute, “the trial court has discretion ... to impose a mandatory minimum of twenty-five years to life, even if that mandatory minimum exceeds the statutory maximum provided for in section 775.082.” Mendenhall v. State, 48 So.3d 740, 742 (Fla.2010).
By enacting the 10/20/Life statute, the Legislature “clearly mandated that it is the policy of this State to deter the criminal use of firearms.” McDonald v. State, 957 So.2d 605, 611 (Fla.2007). From the plain language of the statute, enhanced punishments are not limited to persons who use guns to perpetrate a crime; rather, as stated in subsection (1), heightened sentences are to be enforced, without discretion, to every person “charged with a felony” who “during the commission of such felony ... carries, displays, uses, threatens to use, or attempts to use any weapon or firearm.” § 775.087(1), Fla. Stat. (2009). Consistent with subsection (1), section 775.087(2)(a)3. does not require an intentional or knowing discharge but merely a “discharge” that resulted in death or great bodily harm to any person.
Since a defendant may be subjected to a heightened sentence for carrying a firearm during the commission of the felony, it is clear that the Legislature sought not only to prevent the intentional use of guns during the commission of crimes, but also to divorce firearms from criminal conduct altogether. This legislative approach to guns and criminal conduct derives from the capacity of a firearm to turn any altercation deadly:
Guns make killing immensely easier. Guns make killing far less direct and personal. Because most humans are incapable of choking, knifing or beating anyone to death, guns significantly increase the universe of possible killers. Guns make more killings more likely.
Collazo v. State, 966 So.2d 429, 434 (Fla. 4th DCA 2007) (Farmer, J., dissenting).
Section 775.087(2)(a)3. does not call for the sentencing judge to evaluate the level of a defendant’s culpability when *239 a firearm has discharged “during the course of the commission of a felony.” Wiley’s conduct fell within the purview of the statute, so the court’s sentence was proper.
II
In his second issue, Wiley contends that Florida’s 10/20/Life statute, on its face, violates the federal and state constitution’s prohibition on cruel and unusual punishment, since it “authorized] excessive mandatory LIFE sentences without parole without regard to the nature of the prior offenses, the wishes of the victim, mitigation circumstances concerning the defendant’s background, or concerning all the circumstances of the present offense.” Additionally, Wiley argues that the statute is unconstitutional as applied to this case, since “the Florida Legislature’s indication of the maximum sentence for” third-degree murder is fifteen years in prison, not life imprisonment. Both arguments are without merit.

Standard, of Review

“The standard of review for the legality of a criminal sentence is de novo.” State v. Valera, 75 So.3d 330, 331-32 (Fla. 4th DCA 2011) (citing Grosso v. State, 2 So.3d 362, 364 (Fla. 4th DCA 2008)).

Wiley’s Life Sentence Was Constitutional

As recognized by the Florida Supreme Court, “[t]he Eighth Amendment to the United States Constitution and article I, section 17 of the Florida Constitution have' historically provided protection relative to the mode and method of punishment, not the length of incarceration.” Hall v. State, 823 So.2d 757, 760 (Fla.2002) (footnote omitted); see also Lightbourne v. McCollum, 969 So.2d 326, 335 (Fla.2007) (“The Eighth Amendment has historically been the vehicle used to measure whether a particular method of execution was permissible.”) As such, “Florida courts have been reluctant to declare a prison sentence unconstitutional because of its length.” Andrews v. State, 82 So.3d 979, 984 (Fla. 1st DCA 2011) (citing Adaway v. State, 902 So.2d 746, 748 (Fla.2005)).
Likewise, unlike general judicial concerns regarding the legality of a sentence within a statutory framework, “[t]he length of the sentence actually imposed is generally said to be a matter of legislative prerogative.” Hale v. State, 630 So.2d 521, 526 (Fla.1993) (quoting Leftwich v. State, 589 So.2d 385, 386 (Fla. 1st DCA 1991)) (alteration in original). Reviewing courts “should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals.” Solem v. Helm, 463 U.S. 277, 290, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (footnote omitted); see also Lightbourne, 969 So.2d at 336 (“[C]ourts cannot require the legislature to select the least severe penalty so long as the penalty is not inhumane or disproportionate to the crime.” (quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976))).
The sentence in this case does not violate the federal or state constitution. The “Florida Supreme Court has held that in order for a prison sentence to constitute cruel and unusual punishment solely because of its length, the sentence must be grossly disproportionate to the crime.” Andrews, 82 So.3d at 984 (citing Adaway, 902 So.2d at 750); see also Lightbourne, 969 So.2d at 336 (“A punishment [will be] excessive [only] if: (1) the punishment involves the ‘unnecessary and wanton infliction of pain’; or (2) the punishment is grossly out of proportion to the severity of the crime.” (quoting Gregg, 428 U.S. at *240 173, 96 S.Ct. 2909)). In making this evaluation, reviewing courts must consider three objective factors:
First, a court must consider the “gravity of the offense and the harshness of the penalty.” [Solem, 463 U.S. at 292, 103 S.Ct. 3001.] Second, a court may examine “the sentences imposed on other criminals in the same jurisdiction.” Id. Third, a court may examine “the sentence imposed for the commission of the same crime in other jurisdictions.” Id.
Andrews, 82 So.3d at 984.
In this regard, this court has considered and rejected a similar challenge as to the severity of mandatory minimum sentencing under the 10/20/Life statute. See Nelson v. State, 811 So.2d 761, 764 (Fla. 4th DCA 2002) (“[W]e are not persuaded by appellant’s argument that his twenty-five year minimum prison sentence for discharging a firearm, killing one person and seriously injuring another, constitutes cruel or unusual punishment.”).
Here, Wiley, a habitual felony offender, was sentenced to life in prison after inadvertently shooting and killing a person while in the process of committing another felony, aggravated battery. It can hardly be said that this sentence is “grossly disproportionate,” as Wiley’s actions resulted in the taking of a human life. Given the severity of the crime and the deference this court must give to the Legislature’s decisions regarding the length of a sentence, we find no constitutional violation in the sentence.
III
In his final issue on appeal, Wiley asserts that “the trial court illegally sentenced [him] for count II, third degree murder, to Life in prison plus a twenty five (25) year mandatory minimum sentence, pursuant to the 10/20/life statute.” Wiley states that “[t]he 10/20/life statute provides for a mandatory sentence of twenty five (25) years in prison up to life but not both.” This argument, however, misconstrues the trial court’s sentence imposition.
“Section (1) of the 10-20-life statute mandates reclassification of felonies committed with a firearm to a higher degree where use of a firearm is not an essential element of the underlying felony.” Dallas v. State, 898 So.2d 163, 165 (Fla. 4th DCA 2005); § 775.087(1), Fla. Stat. (2009).[1] Here, Wiley was convicted of third-degree murder, a second degree felony punishable by a maximum sentence of fifteen (15) years in prison. § 775.082(3)(c), Fla. Stat. (2009). Applying the reclassification portion of the statute, Wiley’s offense was properly reclassified as a first degree felony, punishable by up to 30 years in prison. § 775.082(3)(b), Fla. Stat. (2009).
In addition to reclassification, the 10/20/Life statute also “requires the imposition of a mandatory minimum sentence where a firearm is possessed or used during the commission of certain enumerated *241 crimes, including murder.” Mendenhall, 48 So.3d at 746. Section 775.087(2)(a)3. provides that a “convicted person” who falls within it is purview
shall be sentenced to a minimum term of imprisonment of not less than 25 years and not more than a term of imprisonment of life in prison.
In Mendenhall, the Florida Supreme Court construed this provision to provide “the trial court [with] discretion ... to impose a mandatory minimum of twenty-five years to life, even if that mandatory minimum exceeds the statutory maximum provided for in section 775.082.” 48 So.3d at 742.[2] However, while Mendenhall pertained to the trial court’s discretion to set a mandatory minimum sentence, it did not address whether the trial court might impose a sentence longer than the mandatory minimum and in excess of the statutory maximum sentence as provided in section 775.082.
In this regard, section 775.087(2)(b) provides that the mandatory minimum sentence in subsection (2)(a)3. does “not prevent a court from imposing a longer sentence of incarceration as authorized by law in addition to the minimum mandatory sentence.” (Emphasis added). From a literal reading of the statute, it appears that while a trial judge may sentence a defendant pursuant to section (2)(a)3. to a mandatory minimum sentence between twenty-five years to life, the trial judge may give a sentence over the mandatory minimum selected only if “authorized by law.”
Here, Wiley’s conviction for third-degree murder was properly reclassified pursuant to the 10/20/Life statute as a first-degree felony, punishable by a maximum of 30 years in prison. However, the trial court also found Wiley to be a habitual felony offender, which, pursuant to section 775.084(4)(a)l., provided that “[t]he court ... may sentence the habitual felony offender as follows: (l)[i]n the case of a ... felony of the first degree, for life.” § 775.084(4)(a)l., Fla. Stat. (2009). Therefore, because Wiley was determined to be a habitual felony offender and the 10/20/ Life reclassification applied, the life sentence was “authorized by law.” See Walker v. State, 473 So.2d 694, 698-99 (Fla. 1st DCA 1985) (finding that a defendant charged with a second degree felony may be sentenced to life imprisonment under the combined reclassification provisions of both section 775.087 and 775.084).

Affirmed.

POLEN, J„ and STONE, BARRY J., Senior Judge, concur.

. Subsection (1) provides:
(l) Unless otherwise provided by law, whenever a person is charged with a felony, except a felony in which the use of a weapon or firearm is an essential element, and during the commission of such felony the defendant carries, displays, uses, threatens to use, or attempts to use any weapon or firearm, or during the commission of such felony the defendant commits an aggravated battery, the felony for which the person is charged shall be reclassified as follows:
(a) In the case of a felony of the first degree, to a life felony.
(b) In the case of a felony of the second degree, to a felony of the first degree.
(c) In the case of a felony of the third degree, to a felony of the second degree.
§ 775.087(1), Fla. Stat. (2009).

. As such, in Mendenhall, the supreme court affirmed a defendant’s sentence of thirty-five (35) years imprisonment with a mandatory minimum of thirty-five (35) years, despite that the statutory maximum for the defendant's core conviction was thirty (30) years imprisonment.