DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**JOHN HENRY,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D12-779

[ August 20, 2014 ]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Karen Miller, Judge; L.T. Case No. 2007CF007607AMB.

Carey Haughwout, Public Defender, and Christine C. Geraghty, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Melvin G. Mosier, Assistant Attorney General, West Palm Beach, for appellee.

HANZMAN, MICHAEL, Associate Judge.

Appellant John Henry was convicted of second degree murder with a weapon and sentenced to life in prison. He claims that the trial court should have granted his motion for judgment of acquittal because—in his view—the evidence fell short of proving that he acted in a manner "evincing a depraved mind regardless of human life," an element of the charged offense. *See* § 782.04(2), Fla. Stat. (2006); Fla. Std. Jury Instr. (Crim.) 7.4; *Light v. State*, 841 So. 2d 623, 625 (Fla. 2d DCA 2003). Appellant also insists that the trial court committed reversible error by allowing the State to play an audio recording of testimony he gave in a prior trial, thereby enabling the jury to draw an impermissible inference as to why he was not testifying at his retrial.[1] We affirm.

---

[1] Appellant was initially indicted for first degree murder and convicted of second degree murder. We reversed, finding that the trial court had incorrectly instructed the jury on the lesser included offense of manslaughter by act. *Henry v. State*, 126 So. 3d 1071 (Fla. 4th DCA 2011). Appellant elected to testify at the first trial but invoked his constitutional right to refuse to testify during the retrial.

The evidence at trial was not in material conflict. Appellant believed that Isaias Arroyo had burglarized his apartment. A few days later he saw Mr. Arroyo driving in the neighborhood. Appellant jumped into a friend's car and directed the friend to follow Mr. Arroyo's vehicle. During this pursuit, appellant's friend told him that he kept a baseball bat in the trunk.

Mr. Arroyo, accompanied by his wife, eventually pulled into a Wal-Mart parking lot. Appellant then retrieved the baseball bat from the trunk of the car and proceeded to repeatedly—and violently—strike Mr. Arroyo on his body, neck, and head. This relentless beating continued despite Mr. Arroyo's initial attempt to flee, and his later futile effort to protect himself while on the ground. Though conscious at the time paramedics arrived, Mr. Arroyo later slipped into a coma and eventually died of resulting brain injuries. While appellant acknowledged that he followed Mr. Arroyo seeking revenge and that he intended to engage in a fight, he denied any intent to kill and testified that he only planned on using the bat after his friend told him it was in the trunk of the car.[2]

Upon the close of the State's case, appellant timely moved for a judgment of acquittal on the charge of second degree murder, arguing that his conduct only rose to the level of a third degree murder based upon aggravated battery with a deadly weapon. The trial court denied the motion and instructed the jury on second degree murder with a weapon and the lesser included offenses of manslaughter with a weapon and third degree felony murder. The jury rendered its verdict finding appellant guilty on the second degree murder charge. He was subsequently sentenced to life in prison.

Our standard of review of the trial court's order denying appellant's motion for judgment of acquittal is de novo. *Ortiz v. State*, 36 So. 3d 901,

His prior testimony was clearly admissible, *see State v. Billie*, 881 So. 2d 637, 639 (Fla. 3d DCA 2004); § 90.803(18), Fla. Stat. (2011), and the trial court required that the recording be redacted so all the jury would hear were the questions and answers—the same as if a transcript had been read. And, unlike the situation presented in *Barnes v. State*, 970 So. 2d 332 (Fla. 2007), neither the recording nor the transcript was provided to the jury during deliberations. We find no abuse of discretion in the trial court's handling of this evidence and affirm on this point without further discussion.

[2] Evidence that the defendant intended to kill the victim is not required to secure a conviction for second degree murder. *State v. Montgomery*, 39 So. 3d 252, 256 (Fla. 2010).

902 (Fla. 4th DCA 2010). Our task is to ascertain whether, after viewing the evidence in a light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt. *Pagan v. State*, 830 So. 2d 792, 803 (Fla. 2002). In a second degree murder case, those elements are that: (1) the victim is dead; (2) the death was caused by the criminal act of defendant; and (3) the death was an unlawful killing by an act "imminently dangerous to another and demonstrating a depraved mind regardless of human life . . . ." § 782.04(2), Fla. Stat. (2006); Fla. Std. Jury Instr. (Crim.) 7.4.

Appellant does not challenge the sufficiency of the State's proof on the first two elements of the crime, as it is undeniable that the victim is deceased and that his death was caused by appellant's criminal act. Nor does appellant deny that he engaged in conduct "imminently dangerous to another"—the first of two criteria embedded within the third element. Rather, appellant's sole claim is that as a matter of law the evidence failed to prove that he acted in a manner demonstrating a "depraved mind without regard for human life," the second finding required to satisfy the crime's third element.[3] He insists that the evidence, even when viewed in a light most favorable to the State, proves only that he engaged in reckless behavior in the form of an uncontrolled overreaction to his perceived victimization, and he directs us to a number of decisions vacating second degree murder convictions under what he suggests were similar circumstances.[4]

---

[3] What is described as the "third element" of this crime actually requires proof sufficient to support two distinct findings—the first being that the act itself be "imminently dangerous to another," and the second being that it was done in a manner "demonstrating a depraved mind regardless of human life . . . ." § 782.04(2), Fla. Stat. (2006). An act is "imminently dangerous to another" if a person of ordinary judgment would know it was reasonably certain to kill or do serious bodily injury. Fla. Std. Jury Instr. (Crim.) 7.4. As for the second component of this element, a defendant's conduct evinces a "depraved mind without regard for human life," if done in ill will, hatred, spite or evil intent, and is of such a nature that the act itself indicates indifference to human life. *Id.*; *Wiley v. State*, 60 So. 3d 588, 591 (Fla. 4th DCA 2011).

[4] Appellant also makes much of the fact that, unlike a firearm, a baseball bat is not inherently a deadly weapon, and points out that when he left the scene, Mr. Arroyo was alive, moving, and still appeared to be conscious. We find both observations irrelevant. First, while a baseball bat might not be as inherently deadly as a firearm, it was still a jury question as to whether the manner in which appellant used the baseball bat constituted an act "imminently dangerous to another and demonstrating a depraved mind" without regard for human life. Competent, substantial evidence supported the jury's determination that it was. As for appellant's second point, in assessing whether an act was committed in a

To be sure, appellate courts—including this court—have reversed second degree murder convictions when the evidence proved no more than reckless behavior. *See, e.g.*, *Wiley v. State*, 60 So. 3d 588, 591-92 (Fla. 4th DCA 2011) (defendant who hit his sister's boyfriend on the head with a gun, causing it to discharge and kill a bystander, did not act in a manner evincing a depraved mind); *Light*, 841 So. 2d at 626 (defendant who had no prior history with victim, and demonstrated no "enmity at the time of the incident," was guilty of simply "a serious, momentary misjudgment concerning the amount of force that was permissible" during an altercation on a dance floor).

We also have reversed second degree murder convictions where it was clear that the defendant impulsively overreacted to an immediate provocation. *See, e.g.*, *Dorsey v. State*, 74 So. 3d 521, 524-25 (Fla. 4th DCA 2011) (evidence was insufficient to support second degree murder conviction where defendant, after being confronted by a number of heavily intoxicated men, and punched in the face by victim, impulsively overreacted by shooting); *McDaniel v. State*, 620 So. 2d 1308, 1308 (Fla. 4th DCA 1993) (reversing second degree murder conviction of father who overreacted by using excessive force—a knife—to "ward off further attack" by his son); *accord Poole v. State*, 30 So. 3d 696, 698-99 (Fla. 2d DCA 2010) (reversing second degree murder conviction where evidence conclusively established that victim lunged at defendant "in an apparent attack" causing defendant, who had "nowhere to retreat," to lash out with a knife).

These decisions recognize that: (a) a defendant who at worst acts recklessly does not satisfy the "depraved mind" element of the crime; and (b) conduct in the form of an immediate overreaction to an assault is generally insufficient to prove ill will, hatred, spite, or evil intent, as those mental states usually require more than an instant to develop. *See Light*, 841 So. 2d at 626. Put simply, there certainly are cases where the quantity or quality of evidence does not permit a finder of fact to conclude, beyond a reasonable doubt, that the defendant committed an act "imminently dangerous to another and evincing a depraved mind regardless of human life . . . ." § 782.04(2), Fla. Stat. (2006). This is not one of them.

---

manner evincing a "depraved mind regardless of human life," the relevant inquiry is focused on the defendant's state of mind and the nature and degree of the defendant's behavior, not on how long the victim was able to consciously withstand the assault or remain alive.

4

Appellant's conduct was far from merely reckless. He chased the victim with a baseball bat, striking him repeatedly and violently more than 15 to 20 times, including several blows to the head. The evidence, viewed in the light most favorable to the State, showed that appellant continued this savage beating even after Mr. Arroyo lay motionless on the ground. This behavior was clearly in disregard for human life and was arguably sufficient to support even a first degree murder charge. *Cf. Lanzafame v. State*, 751 So. 2d 628 (Fla. 4th DCA 1999) (affirming first degree murder conviction in case where defendant repeatedly hit the victim in the head with a baseball bat). Furthermore, appellant's assault on Mr. Arroyo—while obviously an "overreaction"—was not an "impulsive" response to any threat at all, let alone an immediate one. It was committed out of ill will and hatred, in revenge for a perceived burglary that occurred days prior—a temporal gap which provided appellant ample time for reflection and contemplation. In sum, and as Justice Canady recently observed through a comment particularly apropos here, "[a] defendant who has brooded on a prior wrong and has nursed his resentment and anger into a full-blown rage is not one who lacked a depraved mind . . . ." *Haygood v. State*, 109 So. 3d 735, 747 (Fla. 2013) (Canady, J., dissenting).

Appellant's vicious attack was a deliberate administration of "street justice," *Antoine v. State*, 138 So. 3d 1064, 1074 (Fla. 4th DCA 2014), and the jury's finding of guilt is supported by competent evidence establishing each element of the crime for which he was convicted. *Johnston v. State*, 863 So. 2d 271, 283 (Fla. 2003) ("Generally, an appellate court will not reverse a conviction that is supported by competent, substantial evidence.").

*Affirmed.*

DAMOORGIAN, C.J., and FORST, J., concur.

\*　　　\*　　　\*

***Not final until disposition of timely filed motion for rehearing.***

5